Day, J.
 

 The state contends that it was taken by surprise by the adverse testimony of its witness; the facts, in substance, being that he had made a sworn, written statement to the county officials in which he related all the details of the crime and named and identified his three associates; that Musolino was the first to be tried and he did not take the witness stand in his own behalf; that he took the witness stand for the first time at the trial of the defendant; that “the state was naturally surprised at Musolino’s failure to testify at Duffy’s trial in accordance with his sworn confession and could not understand his sudden hostility after his own confession”; and that in order to probe the conscience and refresh the memory of Musolino he was asked, over the objections of the defendant, whether he had not previously stated that Duffy was with him on the night Of the burglary and participated therein. Specific portions of his sworn statement identifying the accused were read to him.
 

 The Court of Appeals, in upholding defendant’s contention that the state was not. taken by surprise, points to the colloquy between counsel and court, during the course of which the prosecuting attorney stated: “I am not attempting to'impeach my own witness; I am calling a witness that is hostile.” The Court of Appeals said this statement implies that the state had knowledge of the witness’ hostility before calling him; that a party calling a witness known to be hostile may expect testimony which is adverse, and when such testimony is produced it comes without surprise.
 

 We find nothing in the brief of the state specifically denying knowledge on its part of the witness’ hostility
 
 *20
 
 before calling Mm. We shall therefore proceed on the assumption that such knowledge existed and shall consider the controlling questions raised thereby, namely, whether the prosecuting attorney, in calling an accomplice of the accused as a state’s witness whom he knows to be hostile, may be said to have been taken by surprise by his adverse testimony, which is at variance with his sworn, written statement, and whether the prosecuting* attorney may question the witness thereon in order to probe his conscience and to refresh his recollection.
 

 In
 
 Hurley
 
 v.
 
 State,
 
 46 Ohio St., 320, 21 N. E., 645, 4 L. R. A., 161, the court lays down this rule, in paragraphs 1 and 2 of the syllabus:
 

 “1. A party who calls a witness, and is taken by surprise by his unexpected, and unfavorable testimony, may interrogate him in respect to declarations and statements previously made by him, which are inconsistent with his testimony, for the purpose of refreshing his recollection, and inducing him to correct his testimony, or explain his apparent inconsistency; and for such purpose his previous declarations may be repeated to him, and he may be called upon to, say. whether they were made by him.
 

 “2.
 
 In case the witness denies having made such statements, or his answer is ambiguous concerning them, it is not competent for the party calling him, to prove them by other witnesses.”
 

 This doctrine is generally recognized. See annotation in 74 A. L. R., 1042.
 

 The condition precedent to the right of a party to interrogate his own witness concerning a prior statement by him, made at variance with his testimony, is that the party be taken by surprise by the adverse testimony. Was the state here taken by surprise?
 

 When calling Musolino as its witness, the state had in its possession his written statement, naming and
 
 *21
 
 identifying tlie defendant as one who participated in the perpetration of the crime. The statement was made under oath, voluntarily given, and stood unretracted. The state received no forewarning from the witness of his intention to contradict or repudiate it. The state, relying on this statement, believed that his testimony would be in accord therewith. Though knowing him to be hostile, the state had a right to believe, in the absence of an express intention to the contrary, that the witness would not wilfully contradict, under oath, his prior statement under oath, and that he would not deliberately place himself in a position where he would be subjected to a possible charge of perjury. Where, under such circumstances, the testimony of the witness is in direct contradiction to his previous sworn, written statement, it may be said to come unexpectedly and to take the'state by surprise.
 

 When a witness has voluntarily made a written statement, under oath, as to the existence of a state of facts, the party calling him may,-in the absence of an express forewarning from the witness of an intention to repudiate it and notwithstanding knowledge of his hostility, rely upon such statement and expect his testimony to be in accord therewith; and if his testimony is in direct contradiction thereto as to a material fact, such party will be deemed taken by surprise as a matter of law.
 

 The witness may not, however, be directly impeached by the party producing him. This rule is based on the theory that when a party produces a witness he vouches for his veracity; that he cannot hold him out as worthy of belief when his testimony is favorable and impeach his credibility when his testimony is adverse. However, when the party is' taken by surprise by the adverse testimony of the witness as to a material fact, he must proceed on the assumption that the witness is either forgetful or hostile, but not
 
 *22
 
 that his testimony is false. Proceeding on that assumption, the party may attempt to refresh the recollection of the witness and to probe his conscience by asking him whether he had not, on a previous named occasion, made a statement, reciting facts materially different from those to which he testified. In such case, it is competent to read to the witness all or portions of his prior inconsistent statement, as a means by which to quicken his memory and thereby to induce him to speak the truth. If the fact of such interrogation is incidentally to impeach his credibility, the inquiry is not on that account to be excluded. Though a party may not .directly impeach his own witness, yet, when taken by surprise, he may interrogate him concerning his prior, variant statement, even though its effect is incidentally to reflect upon his veracity. Such interrogation, being competent for the purpose of refreshing the witness’ recollection, remains competent for that purpose even though the witness be thereby incidentally discredited. There is no more reason for precluding a party, taken by surprise, from thus interrogating his own witness lest he incidentally impeach him thereby, than there is for excluding evidence, which is competent for one purpose, merely because it is incompetent for another.
 

 Incidental impeachment by a party of his own witness will often arise as an inevitable consequence resulting from the introduction of evidence which is relevant and competent. For illustration, a party may prove, by other witnesses, facts which are relevant and material even though the testimony of some other witnesses of the party be thereby directly contradicted. Such evidence is not, however, for that reason excluded. It is considered as incidental and not direct impeachment.
 

 The danger of the jury misconceiving the purpose and effect of the interrogation can be obviated by an
 
 *23
 
 appropriate instruction from the court to the jury to the effect that such previous contradictory statement is not to be considered as evidence. However, the record fails to disclose such instruction or any request therefor on the part of counsel for the defendant. Failure to so instruct was error, but was it reversible error? It was an error of omission which could have been corrected had the court’s attention been called thereto. The omission was as obviously inadvertent as the failure of counsel to call the court’s attention thereto was unquestionably inadvertent. A general exception was taken to the charge as given. However, such an exception challenges only errors of commission and is insufficient to bring the errors of omission to the trial court’s attention. See New
 
 York Life Ins. Co.
 
 v.
 
 Hosbrook,
 
 130 Ohio St., 101, 196 N. E., 888, paragraph 1 of syllabus.
 

 Inadvertent omission to charge is not reversible error unless the court’s attention is called thereto and further instructions are requested and refused.
 
 Columbus Ry. Co.
 
 v.
 
 Ritter,
 
 67 Ohio St., 53, 65 N. E., 613;
 
 State
 
 v.
 
 McCoy,
 
 88 Ohio St., 447, 103 N. E., 136;
 
 Northwestern Ohio Natural Gas Co.
 
 v.
 
 First Congregational Church,
 
 126 Ohio St., 140, 184 N. E., 512; New
 
 York Life Ins. Co.
 
 v.
 
 Hosbrook, supra; Valencic
 
 v.
 
 Akron & Barberton Belt Rd. Co.,
 
 133 Ohio St., 287, 13 N. E. (2d), 240.
 

 Defendant argues that since the inconsistent statement was made by the witness out of the presence of the accused, it was error for the court to permit cross examination thereon of the witness who was an accomplice of the accused. In support of this position, defendant cites the case of
 
 State
 
 v.
 
 Fox,
 
 133 Ohio St., 154, 12 N. E. (2d), 413, wherein it was held that where two persons are jointly indicted and tried, the admissions of one as' to the offense charged are not admissible against his alleged accomplice. However, the
 
 *24
 
 record does not disclose that the purpose of the interrogation in the instant case was to inject the statement into the case as evidence against the accused. The question here is not whether the statement of an accomplice, made out of the presence of the accused, is admissible as evidence against him, but rather whether the state may interrogate its own witness, an accomplice of the accused, concerning his' prior inconsistent, sworn statement, in order to refresh his recollection and thereby to impel him to speak the truth. Por such purpose, it is wholly immaterial whether the statement be made in or out of the presence of the accused. The fact that the statement is inadmissible as evidence against the accused does not preclude a party, taken by surprise, from questioning his own witness concerning such statement for the purpose of enlivening his recollection.
 

 Where the previous inconsistent statement of the witness is not offered or introduced by the state as substantive evidence against the accused, and interrogation thereon is occasioned by surprise and conducted solely for the purpose of refreshing the witness’ recollection or to probe his conscience, it is not necessary that the statement be made in the presence of the accused.
 

 The judgment of the Court of Appeals is therefore reversed and that of the Common Pleas Court affirmed.
 

 Judgment reversed.
 

 Weygandt, C. J., Matthias, Zimmerman, Williams and Gorman, JJ., concur.