THE STATE OF OHIO, APPELLEE, *v.* MINNEKER, APPELLANT.

(No. 70-411—Decided July 14, 1971.)

. 156

Mr. *Harry Friberg*, prosecuting attorney, and *Mr.
James E. McCormick*, for appellee.
Mr. *Thomas N. Tomczak*, for appellant.

SCHNEIDER, J. On the night of September 14, 1968, two prisoners escaped from the Lucas County Jail.

On November 6, 1968, deputy sheriff Fox commenced an investigation after he was informed by a number of prisoners that they had observed the appellant with pills, nutmeg and whiskey and that he was selling these items to some of the prisoners. During the course of his investigation, Fox was told by a prisoner, Boone, that on two different occasions he had seen appellant with a gun and hacksaw blades taped to his legs. The evidence showed that two prisoners used hacksaw blades in their escape.

Later, it was learned that appellant was frequenting the Starlite Bar in Toledo, Ohio, and seeing a woman known as Tonya Thomas. Since they had information that the appellant had pills and a syringe in his possession which he was selling to the prisoners, they asked Mrs. Thomas to cooperate with them in the appellant's apprehension.

On the afternoon of November 30, the appellant entered the Starlite Bar and met Tonya Thomas. An officer from the Toledo Police Department was sitting at the bar and saw an envelope pass from Mrs. Thomas to appellant. At 5:50 p. m. when appellant left the bar, the officers, on a prearranged signal, followed him out and immediately advised him that he was under arrest, at which point appellant voluntarily reached into his pocket and handed the police the envelope containing the marijuana he received from Mrs. Thomas.

A week prior to trial, a state's witness, Lamont, had a conversation with the prosecutor relative to his prior conversation with the appellant regarding the jail break. After taking the stand Lamont forgot some and denied other parts of the conversation and the court declared him a hostile witness. Thereafter, the state called deputy sheriff Fox, who was present during the conversation with Lamont and the prosecutor, to testify as to Lamont's oral statement implicating the accused.

Appellant contends that when a single indictment contains charges against an appellant for possession of narcotics, possession of narcotic instruments, and conveying articles into a jail to aid an escape, the joinder is improper and prejudicial under R. C. 2941.04.

R. C. 2941.04 states, in part:

"An indictment or information may charge two or more different offenses connected together in their commission, or different statements of the same offense, or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more indictments or informations are filed in such cases the court may order them to be consolidated."

Both parties cite *State* v. *Atkinson* (1965), 4 Ohio St. 2d 19, as determinative of the law. In *Atkinson*, the indictment joined counts of forging a check, uttering a forged check, and carrying a concealed weapon. This court noted that R. C. 2941.04 makes no provision for joining the three offenses, "nor does the record itself show any connection between counts one and two and the third count in the acts or conduct of the defendant." *State* v. *Atkinson, supra* (4 Ohio St. 2d 19, 21). Therefore, the joinder was improper.

The distinguishing factor between *Atkinson* and the instant case is that here there was ample evidence in the record to connect the three counts through the acts and conduct of the appellant.

In sustaining the joinder of offenses here, we are not unaware that in some instances a joinder of separate and distinct offenses *unrelated in their commission* may prejudice an appellant's right to a fair trial. Improper joinder

may not only confuse a jury but may create an unfavorable impression in their minds as to an appellant's character before any evidence has been admitted as to his guilt or innocence. This is not the case here.

Due to the relationship of the counts to the acts and conduct of the appellant, if the counts were tried separately, the state, in attempting to prove one of the counts, could hardly avoid eliciting testimony as to the others.

In view of the totality of the circumstances surrounding appellant's conduct, we hold that the denial of appellant's motion for improper joinder did not constitute prejudicial error.

For purposes of clarity, appellant's second and third propositions of law will be treated as one.

Appellant contends that, absent a showing of hostility or surprise, it was error for the trial court to permit the state to cross-examine its own witness and thereafter discredit that witness through the testimony of another.

"The condition precedent to the right of a party to interrogate his own witness concerning a prior statement by him, made at variance with his testimony, is that the party be taken by surprise by the adverse testimony." *State* v. *Duffy* (1938), 134 Ohio St. 16, 20. Absent any forewarning of Lamont's intent to repudiate under oath statements made a week prior to trial, his subsequent adverse testimony may be said to have come unexpectedly and to have taken the state by surprise. *State* v. *Duffy, supra* (134 Ohio St. 16).

Declaring a witness hostile is a matter of discretion on the part of the trial court. See *United States* v. *Duff* (1964), 332 F. 2d 702 (C. A. E. D. Mich.). See, also, 98 Corpus Juris Secundum 120, Witnesses, Section 368, n. 86. There was no abuse of discretion here.

The rule of law long recognized in Ohio is that a party surprised by the adverse testimony of his witness should be permitted to cross-examine him concerning his prior inconsistent statement only for the purpose of refreshing his recollection. *State* v. *Springer* (1956), 165 Ohio St. 182; *State* v. *Duffy, supra* (134 Ohio St. 16); *Hurley* v. *State*

(1889), 46 Ohio St. 320. See, also, 117 A. L. R. 326, 328; 74 A. L. R. 1042, 1052 *et seq.*; 58 American Jurisprudence 443 to 449, Witnesses, Sections 798 to 804; 98 Corpus Juris Secundum 537, Witnesses, Section 578.

We find no error prejudicial to the appellant in the cross-examination by the state of its own witness.

In other jurisdictions, a party may not only impeach his own witness when surprised by his adverse testimony, but if the witness denies having made the statement he may prove the same to impeach him.[1] However, there are certain statutory limitations. New York and Wisconsin through legislative enactment limit the impeachment of one's witness to statements in writing or under oath. Section 8-a, N. Y. Code Cr. Proc.; Section 325.35, Wis. Stats. (for criminal cases).[2]

In the absence of statute, this state forbids a party from discrediting its own witness by proof of prior inconsistent statements through the testimony of another. *Hurley* v. *State, supra* (46 Ohio St. 320); *State* v. *Duffy, supra* (134 Ohio St. 16). See, also, 58 American Jurisprudence, 448, Witnesses, Section 803. The rationale is well stated by Greenleaf in his treatise on *Evidence*:

''When a party offers a witness in proof of his cause, he thereby, in general, represents him as worthy of belief.

---

[1]Section 90.09, Fla. Stats.; Section 20-2-4, N. M. Stats.; Section 1743, Vt. Stats.; Section 8-292, Va. Code; Section 28-706, Ark. Stats.; Section 785, Evidence, Cal. Code; Section 9-1207, Idaho Code; Section 2-1726 Ind. Stats.; Rule 43.07, Civ. Proc., Ky. Code; Section 45-590, Ore. Rev. Stats.; Art. 38.28, Texas Code Cr. Proc.; Section 3-2606, Wyo. Stats.; Section 8-a, N. Y. Code Cr. Proc.

According to some authorities, it is a matter of trial court discretion whether to permit a party who has been surprised by his own witness to impeach the latter by proof of prior inconsistent statements. *Sneed* v. *United States* (1924), 298 F. 911, 37 A. L. R. 772; *Katz* v. *Ross* (1954), 216 F. 2d 880, 48 A. L. R. 2d 1233.

[2]''. . . evidence as to oral statements is too easily obtainable, and might well be used as a means of coercion . . . The guarantee against coercion is maintained by limiting prior inconsistent statements to those which are written or made under oath. . . .'' Comment to Section 8-a, N. Y. Code, Crim. Proc., State of N. Y., The Judicial Council (1936), at pp. 183, 184 as cited in 18 Albany L. Rev. 233.

He is presumed to know the character of the witnesses he adduces; and, having thus presented them to the court, the law will not permit the party afterwards to impeach their general reputation for truth, or to impugn their credibility by general evidence, tending to show them to be unworthy of belief; for this would enable him to destroy the witness if he spoke against him, and to make him a good witness if he spoke for him, with the means in his hand of destroying his credit if he spoke against him." Greenleaf on Evidence 563, Section 442. See, also, Wharton on Evidence, 528, Section 549.

Applying the rule of *Hurley* to the facts of the instant case, we decline to speculate as to whether it will survive the onward march of technological development which will permit the instant presentation of an entire interview with a prospective client. However, noting the grave possibility for inaccuracy and misstatement, we do not find it unreasonable to forbid an attack upon the credibility of a party's own witness by proof of that witness' extra-judicial oral prior inconsistent statement through the testimony of another who was present when the statement was made and who testified from memory as to the substance of the statement which was damaging to the accused.

Proof of Lamont's statement implicating the accused in the jail break constituted prejudicial error as to that count of the indictment in light of the reinforcing effect it had upon the prior adverse testimony of inmates of the jail, whose credibility may be considered suspect by the jury.

Appellant's fourth proposition of law is that where a police officer, who has no personal knowledge of the facts, has never met nor spoken to the alleged informants and signs an affidavit for a search warrant relying solely on the statement of a police officer of another agency, there was a failure of "good and probable cause" for the issuance of a search warrant.

A voluntary delivery over of articles by a suspect before the police present a search warrant for the same does not constitute a search and seizure. "A search ordinarily implies a *quest* by an officer of the law, a *prying into hidden*

*places* for that which is concealed; and that a seizure connotes a *forcible dispossession of the owner.*" (Emphasis supplied.) *State* v. *McCarthy* (1971), 26 Ohio St. 2d 87, citing *Weeks* v. *United States* (1914), 232 U. S. 383, 397. Appellant's attack on the validity of the search warrant is therefore groundless.

Appellant further contends that it was error for the trial court not to instruct the jury on entrapment.

"If an officer of the law has reasonable ground for suspicion that a violation of the law is being perpetrated, it is *not* entrapment for the officer to place himself in a position to apprehend those participating in the criminal conduct, and he may use *inducement* and set traps to apprehend them." (Emphasis supplied.) 15 Ohio Jurisprudence 2d 431, Criminal Law, Section 245.

The record amply demonstrates reasonable grounds for suspicion of the appellant by police officers as to the crimes charged. Thus, there existed no error in failing to instruct the jury on entrapment.

Since the erroneously admitted statement did not relate to the possession count of the indictment, we affirm the judgment below as to that count. But for the reasons heretofore given, we reverse the judgment as to the remaining count and remand the cause to the Court of Common Pleas for further proceedings.

*Judgment affirmed in part and reversed in part.*

HERBERT and CORRIGAN, JJ., concur.

DUNCAN, J., concurs in paragraphs two and three of the syllabus and in the judgment.

STERN, J., concurs in paragraphs one and three of the syllabus and in the judgment, but dissents from paragraph two of the syllabus.

O'NEILL, C. J., and LEACH, J., concur in paragraphs one and three of the syllabus, but dissent from paragraph two of the syllabus and from the judgment.