JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant, Mark Greene, appeals his felonious assault convictions. After a thorough review of the record, and for the reasons set forth below, we affirm in part, and reverse and remand in part.
 {¶ 2} On July 16, 2007, a Cuyahoga County Grand Jury indicted appellant and co-defendant, Seth Green ("Seth"), on four counts. Count One charged attempted murder under R.C. 2903.02(A); Count Two charged felonious assault under R.C. 2903.11(A)(1); Count Three charged felonious assault under R.C. 2903.11(A)(2); and Count Four charged having weapons while under disability under R.C. 2923.13(A)(2).
 {¶ 3} On January 7, 2008, a jury trial began on Counts One, Two, and Three; Count Four was tried to the bench. At the jury trial, after the state presented its case, the trial court granted a directed verdict on the attempted murder charge. The jury found appellant guilty of both counts of felonious assault. The trial court found appellant guilty of having a weapon while under disability.
 {¶ 4} The record indicates that, on February 5, 2008, the trial court sentenced appellant to a total of 16 years in prison, including the following: He received eight years on "felonious assault"; the one-and three-year firearm specifications were merged, and the three-year sentence was ordered to be served prior and consecutive to the eight years; he received five years on the other firearm specification, to be served prior and consecutive to the eight years and three-year *Page 4 
gun specification; he was also sentenced to one year on the charge of weapon while under disability, to be served concurrently to the other sentences.
 {¶ 5} On October 27, 2008, this court remanded the case to the trial court "for clarification of the sentence" because the entry failed to state whether the eight-year sentence applied to Count 2 (felonious assault) or Count 3 (felonious assault). On remand, the trial court clarified its sentencing entry on November 13, 2008 to state that appellant received eight years on Count Two and eight years on Count Three, to be served concurrently to each other.
 Underlying Facts {¶ 6} The facts that gave rise to this appeal began on April 12, 2006 when Brian Williamson ("the victim") was shot in the face as a result of a drive-by shooting. According to the victim, he had been socializing with some friends at the home of Veronica Focareto ("Veronica"). At 10:00 p.m., he was playing football in the street with Jason Kuzma ("Jason"). The victim testified that a white man, wearing a blue bandana, drove down the street in a white car yelling, "Give me a beer, b****." One of the friends threw a beer can at the car. In response, the driver apparently tried to run over the victim, but hit garbage cans instead. The victim ran to the car, tried to hit the driver, and threw a garbage can at the car as it sped off.
 {¶ 7} One hour later, the victim returned to Veronica's neighborhood to visit his friend, Chris Windland, with several other friends, including Jason. Windland's house was across the street from Veronica's house. The friends noticed a car driving around. According to the victim, the car approached him and Jason as they *Page 5 
stood on the sidewalk. The victim stated that the car's passenger shot at him three times. The victim testified that he "believed it was" and "had a feeling it was" the same person he had the confrontation with earlier.
 {¶ 8} Veronica witnessed both altercations. She testified that the driver of the first car wore a blue and black bandana. The victim yelled at the car and chased the driver, ultimately punching him. According to Veronica, later that evening, a white car was driving around. She identified the driver of the car as co-defendant Seth. Veronica stated that the passenger-shooter was the same person she saw driving the car earlier in the evening in the first altercation. This person was still wearing the blue bandana. Veronica saw the passenger lift his arm over the top of the car, then she heard shots.
 {¶ 9} Jason testified that, during the first incident, he was drinking beer with the victim and other friends at Veronica's house. He stated that a car drove up and someone said, "Hey, can I get a beer?" Two of the friends threw beer at the car. When the car backed up, the victim tried to punch the driver. Later, before the second incident, Jason noticed a white car driving around. He noticed a "kid" hanging out the side of the car and saw him shoot two or three times.
 {¶ 10} Co-defendant Seth testified that appellant shot at the victim to retaliate for the earlier incident between the two. Seth stated he got involved after appellant called him and asked for help with "retaliation." Seth picked up appellant in his vehicle and lent him his .40 caliber handgun. Appellant told Seth that he planned to shoot the gun into the air to scare the victim. Appellant was wearing a blue *Page 6 
bandana. At the scene, appellant climbed out the window of the vehicle and stated, "What's up now, punk?" According to Seth, appellant fired three shots, then they drove off.
 {¶ 11} Seth further testified that appellant threw his gun out the car window and jumped out of the car. After being stopped by the police, Seth tried to run on foot, but the police apprehended him. Seth told the police that the shooter was "Mark Anthony." While he was being arrested, Seth's cell phone rang, and the police answered it.
 {¶ 12} According to Officer Thomas Magyar, Seth ran from the car, but was later apprehended. Appellant was nowhere to be seen, but it was later learned that he had called his friend, Dawn Upchurch, for a ride home. Police found an unspent .40 caliber bullet and a blue bandana near Seth's car.
 {¶ 13} Seth's mother, Victoria Green ("Victoria"), testified that her son went out that night. Seth's brother, Joshua Green ("Joshua"), corroborated this information. Victoria went to look for Seth after learning from her daughter, Melissa, that he had been arrested. According to Victoria, Melissa told her that she tried to call Seth, but the police answered his phone.
 {¶ 14} According to Joshua, he received a call from appellant requesting that he remove a handgun from Fulton Parkway, near where Seth was apprehended. Joshua did as he was asked.
 {¶ 15} Dawn Upchurch testified that appellant is her ex-boyfriend, but they still live together and he was at home with her the evening of the incident. *Page 7 
 {¶ 16} The principle evidence against appellant was the testimony of Seth and Joshua. Additionally, Keith Martin, representative of Revol, appellant's cell phone provider, provided testimony regarding cell phone records, which established that appellant made phone calls to Seth, Joshua, and Dawn Upchurch during times covering the two incidents.
 {¶ 17} The victim suffered a gun shot wound to the face. He now suffers from deafness in one ear, partial facial paralysis, debilitating headaches, focusing problems, paranoia, dizzy spells, and flashbacks of his attack.
 {¶ 18} The police were finally able to arrest appellant in July 2007.
 Review and Analysis {¶ 19} Appellant brings this appeal, asserting fourteen assignments of error for our review. For ease of discussion, they are addressed out of order.
 Speedy Trial {¶ 20} "I. Defendant was denied due process of law when his motion to dismiss based upon the lack of a speedy trial was denied."
 {¶ 21} Appellant argues that the trial court erred when it denied his motion to dismiss. More specifically, he alleges that his speedy trial rights were violated. This argument is without merit.
 {¶ 22} The Sixth and Fourteenth Amendments to the United States Constitution, as well as Section 10, Article I of the Ohio Constitution, guarantee a criminal defendant the right to a speedy trial by the state.State v. O'Brien (1987), 34 Ohio St.3d 7, 8, 516 N.E.2d 218. InBarker v. Wingo (1972), *Page 8 407 U.S. 514, 523, 92 S.Ct. 2182, 33 L.Ed.2d 101, the United States Supreme Court declared that, with regard to fixing a time frame for speedy trials, "[t]he States *** are free to prescribe a reasonable period consistent with constitutional standards ***." To that end, the Ohio General Assembly enacted R.C. 2945.71[1] in order to comply with theBarker decision.
 {¶ 23} It is well-established that the Ohio speedy trial statute constitutes a rational effort to enforce the constitutional right to a public speedy trial of an accused charged with the commission of a felony or misdemeanor and shall be strictly enforced by the courts of this state. State v. Pachay (1980), 64 Ohio St.2d 218, 221,416 N.E.2d 589.
 {¶ 24} Once the statutory time limit has expired, the defendant has established a prima facie case for dismissal. State v. Howard (1992),79 Ohio App.3d 705, 707, 607 N.E.2d 1121. At that point, the burden shifts to the state to demonstrate that sufficient time was tolled pursuant to R.C. 2945.72. State v. Geraldo (1983), 13 Ohio App.3d 27, 28,468 N.E.2d 328. *Page 9 
 {¶ 25} We agree with the state that appellant's speedy trial rights were not violated. This determination is based upon a calculation of the days elapsed from the time of appellant's arrest on July 20, 2007 to his trial on January 7, 2008, including time tolled for the various instances.
 {¶ 26} Appellant was in jail the entire time he awaited trial; therefore, he had to have been brought to trial within 90 days. See R.C. 2945.71(C), supra. Because there are clearly more than 90 days between July 20, 2007 and January 7, 2008, appellant has established a prima facie case for dismissal. Accordingly, we evaluate whether the state has satisfied its burden to demonstrate that sufficient time was tolled.
 {¶ 27} Appellant was arrested on July 20, 2007. On July 24, 2007, he filed a motion for a bill of particulars. The state responded on August 8, 2007. "A demand for discovery or a bill of particulars is a tolling event pursuant to R.C. 2945.72[(E)]." State v. Brown, 98 Ohio St.3d 121,2002-Ohio-7040, 781 N.E.2d 159, at the syllabus. Accordingly, from July 20, 2007 to July 24, 2007, four speedy trial days had elapsed.
 {¶ 28} On July 24, 2007, appellant filed a motion for reduction of bond. The prosecution responded on August 28, 2007. A motion for reduction of bond is a motion under R.C. 2945.72(E); therefore, it is a tolling event. Accordingly, the speedy trial clock only began to run again on August 28, 2007 when the state responded. On October 12, 2007, appellant filed motions for a separate trial and *Page 10 
to compel discovery, which are also motions for purposes of tolling under R.C. 2945.72(E). Accordingly, the clock ran for forty-fivedays from August 28, 2007 to October 12, 2007 when appellant filed his motions.
 {¶ 29} The prosecution filed its response to appellant's motion to compel discovery on November 16, 2007. Time was tolled from October 12, 2007 to November 16, 2007. On October 15, 2007, appellant filed a motion for a continuance until October 17, 2007. On October 17, 2007, appellant filed a motion for a continuance until October 24, 2007. "A continuance granted at the request of appellant tolls the speedy trial time as well. R.C. 2945.72(H) allows the tolling of the speedy trial time limit for `[t]he period of any continuance granted on the accused's own motion ***.'" City of Cleveland v. Pangrace, Cuyahoga App. No. 89271,2007-Ohio-6321, at ¶ 27.
 {¶ 30} When the state filed its response on November 16, 2007, the clock would have begun to run again; however, also on November 16, 2007, appellant filed a motion to dismiss. A motion to dismiss acts to toll the time in which a defendant must be brought to trial. State v.Bickerstaff (1984), 10 Ohio St.3d 62, 461 N.E.2d 892. Accordingly, no speedy trial days elapsed since the forty-five days from August 28, 2007 until October 12, 2007.
 {¶ 31} On November 19, 2007, appellant waived his speedy trial rights until December 31, 2007. Trial began on January 7, 2008. Accordingly, from December 31, 2007 to January 7, 2008, seven days of speedy trial time elapsed. *Page 11 
 {¶ 32} The above analysis shows that four, forty-five, and seven days amounted to a total of 56 days. In view of this, we find that the state has met its burden in demonstrating that sufficient time was tolled and that appellant's speedy trial rights were not violated. Accordingly, appellant's first assignment of error is overruled.
 Sufficiency/Manifest Weight {¶ 33} "XIII. Defendant was denied due process of law when the court overruled defendant's motion for judgment of acquittal."
 {¶ 34} "XIV. Defendant is entitled to a new trial as the conviction is against the manifest weight of the evidence."
 {¶ 35} Appellant argues that his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. These arguments are without merit.
 {¶ 36} Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486,124 N.E.2d 148. A conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982),457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652, citing Jackson v. Virginia (1979),443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 37} Where there is substantial evidence upon which the trier of fact has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the trier of fact as to the weight and sufficiency of the evidence. State v. *Page 12 Nicely (1988), 39 Ohio St.3d 147, 529 N.E.2d 1236. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. State v. DeHass ( 1967),10 Ohio St.2d 230, 227 N.E.2d 212. On review, the appellate court must determine, after viewing the evidence in a light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492; Jackson v.Virginia, supra.
 {¶ 38} Sufficiency of the evidence is subjected to a different standard than is manifest weight of the evidence. Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact-finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court "has the authority and duty to weigh the evidence and to determine whether the findings of *** the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial." State ex rel. Squire v. Cleveland (1948),150 Ohio St. 303, 345, 82 N.E.2d 709.
 {¶ 39} The United States Supreme Court recognized the distinctions in considering a claim based upon the manifest weight of the evidence as opposed to sufficiency of that evidence. The court held in Tibbs v.Florida, supra, that, unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal, i.e., invocation of the double jeopardy *Page 13 
clause as a bar to relitigation. Id. at 43. Upon application of the standards enunciated in Tibbs, the court in State v. Martin (1983),20 Ohio App.3d 172, 485 N.E.2d 717, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
 {¶ 40} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Martin at 720.
 {¶ 41} Appellant was convicted of felonious assault under R.C. 2903.11(A)(1) and (A)(2). Under R.C. 2903.11(A), "No person shall knowingly *** cause serious physical harm to another." Under R.C. 2903.11(A)(2), "No person shall knowingly *** cause or attempt to cause physical harm to another *** by means of a deadly weapon or dangerous ordnance."
 {¶ 42} Under R.C. 2901.01, "physical harm" is defined as "Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity [or] any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement."
 {¶ 43} It is undisputed that the victim now suffers from being deaf in one ear, has partial facial paralysis, suffers from headaches, and has dizzy spells. *Page 14 
Based upon this evidence, we find that there was sufficient evidence of "physical harm."
 {¶ 44} The crux of appellant's argument is that there was insufficient evidence that he was the shooter. More specifically, he alleges that the victim was unable to clearly identify his attacker. We find that the other witnesses provided sufficient evidence to establish appellant's identity.
 {¶ 45} The victim testified that he was playing football when a car drove by with someone yelling for a beer. One of the victim's friends threw a beer can at the car, prompting the driver (a white male wearing a blue bandana) to try to run over the victim. Eventually the car left. The victim testified that an hour later, another car came by. The passenger sat in the passenger door window and shot at him twice. Jason, Veronica, and Seth also testified that appellant sat in the window of the passenger door as he shot.
 {¶ 46} Seth testified that he received a call from appellant asking for help to retaliate against the victim. According to Seth, he grabbed a gun and left the house. Seth met with appellant, who was wearing a blue bandana. Seth's mother testified that when she asked Seth where he was going, he answered he was going to see appellant. Seth testified that appellant was the shooter. Appellant told him that he intended to use the gun to scare the victim.
 {¶ 47} According to Veronica, the passenger-shooter in the second car was the same person who had been driving the car during the earlier incident. She *Page 15 
knew it was the same person because both people were blonde, white males, wearing a blue bandana.
 {¶ 48} According to Officer Magyar, it was clear that Seth was the driver (and not the shooter), because when the car finally stopped, Seth ran out of the driver's side door.
 {¶ 49} Joshua testified that appellant called him and asked him to retrieve the gun he had thrown from the car. Joshua further testified that appellant eventually told him that he had shot at the victim.
 {¶ 50} In addition to the testimony of the witnesses identifying the shooter, there was physical evidence that linked appellant to the crime. Mark Lewis, of the Bureau of Criminal Identification and Investigation, testified that there was no gunshot residue found on Seth. Revol representative, Keith Martin, testified to cell phone records that put appellant at the crime scene because appellant had called Seth, Joshua, and Ms. Upchurch. Finally, police found a blue bandana on the ground near the passenger door of the car after arresting Seth.
 {¶ 51} We find that the above evidence is sufficient to prove that appellant shot the victim, and it is clear that the jury did not lose its way in convicting appellant. Accordingly, appellant's thirteenth and fourteenth assignments of error are overruled.
 Continuance *Page 16 {¶ 52} "II. Defendant was denied due process of law when the court refused to grant a continuance because of repeated discovery violations by the state of Ohio."
 {¶ 53} Appellant argues that the trial court erred when it denied his motion for a continuance. More specifically, he alleges that he was entitled to a continuance based upon repeated discovery violations. This argument is without merit.
 {¶ 54} A trial court has discretion in deciding whether to grant a continuance of trial proceedings. State v. Unger(1981),67 Ohio St.2d 65, 67, 423 N.E.2d 1078, syllabus. A reviewing court will not reverse the denial of a continuance unless the trial court abused its discretion. Id. "Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 55} In considering whether the trial court abused its discretion in denying a continuance, we must consider the options available to the trial court under Crim. R. 16(E)(3). "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this [discovery] rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it *Page 17 may make such other order as it deems just under thecircumstances." (Emphasis added.) Crim. R. 16(E)(3).
 {¶ 56} "In a criminal trial in which the prosecution fails to disclose exculpatory evidence, the trial court must consider the following factors in deciding the appropriate way to ensure the fairness of the proceeding: 1) whether the prosecution's failure to disclose was a willful violation of Crim. R. 16; 2) whether foreknowledge of the evidence would have benefitted the accused in the preparation of his defense; and, 3) whether the accused is prejudiced by admission of the evidence." State v. Saucedo, Cuyahoga App. No. 90327, 2008-Ohio-3544, at ¶ 25, citing State v. Parson (1983), 6 Ohio St.3d 442, 445,453 N.E.2d 689.
 {¶ 57} Appellant lists nine alleged instances that he feels entitled him to a continuance; we address each below. After reviewing the alleged discovery violations, we find that there is no evidence that any alleged failures to disclose were willful. We also find that appellant was not prejudiced by any of the alleged discovery violations because of the overwhelming evidence against him. (Also see our discussion of assignments of error thirteen and fourteen above.)
 {¶ 58} 1) "Defense Counsel was not furnished with a copy of Joshua Green's statement."
 {¶ 59} 2) "Defense counsel was never given a copy of Joshua Green's statement until the day the trial commenced. In that statement, Joshua Green *Page 18 
related that he had gone to his grandfather Curtis Green's house *** and there was the resulting confrontation with Curtis Green."
 {¶ 60} 8) Defense counsel against asserts that he did not have Joshua's statement, and "no relief was given to defendant."
 {¶ 61} The state informed the trial judge that Joshua's statement had been given to defense counsel two months prior to trial; however, defense counsel believed that he had not received it at all. As appellant concedes, "the court ordered [the statement] to be furnished." Additionally, after the judge said that he would look into the numerous alleged discovery problems presented by appellant, defense counsel agreed that "none of this really, as far as we know, will impact on the testimony of the first witness, so we may keep the first witness." This illustrates that defense counsel was content with the trial judge's decision at that time.
 {¶ 62} On the second day of trial, after the victim had begun to testify, defense counsel again had discovery issues. Defense counsel claimed that his client was prejudiced by the delay in receiving Joshua's statement because it contained information of a confrontation between Joshua and his grandfather, Curtis Green ("Curtis").
 {¶ 63} We find that the trial court's decision to order the statement to be furnished was sufficient and is acceptable under Crim. R. 16(E)(3), which allows the judge to "make such other order as it deems just under the circumstances." *Page 19 
The trial judge ordered that Curtis, who was already on the defense witness list, wait outside the trial in case defense counsel chose to call him. Clearly, the trial judge remedied this situation.
 {¶ 64} We also find that appellant was not prejudiced by the delay in receiving the statement. With the overwhelming amount of evidence presented that implicated appellant in this crime, the outcome of the case would not have been different even if defense counsel had received the statement earlier.
 {¶ 65} 3) The existence of a photo-lineup that contained a picture of appellant but no pictures of Joshua or Seth.
 {¶ 66} 6) The line-up was provided on the day of trial. It "should have been furnished prior to the date the trial commenced."
 {¶ 67} Appellant argues that defense counsel did not receive the photo lineup card before trial. He also alleges that the lineup was flawed because it did not contain photos of Joshua or Seth. At the time of defense counsel's objection, the trial judge decided that the lineup card had not been offered yet and that the victim had referred to it in his testimony in passing only. Additionally, the state advised that it would make the card available to defense counsel if he wanted to use it for cross-examination. We find that, based upon the overwhelming evidence against appellant, he was not prejudiced by the delay or by the fact that Seth's and Joshua's photos were absent. In other words, the outcome of the trial was not affected. *Page 20 {¶ 68} 4) The victim's statement included information that the victim told police that Matt Higgins told him that Seth had shot him.
 {¶ 69} Appellant argues that he did not know that a person named Matt Higgins had told the victim that Seth was the shooter. The trial judge told him that he could use that information and ordered the state to find Mr. Higgins's address. We find that any alleged discovery violation was corrected when the victim himself testified about this exculpatory information and admitted in court that Higgins identified Seth as the perpetrator. Because this was admitted at trial, and the jury was able to weigh this evidence, we do not find that appellant suffered any prejudice.
 {¶ 70} 5) The prosecutor's witness list did not include addresses for Ronnie DeLuzio or Chris DeLuzio.
 {¶ 71} Appellant argues that the prosecutor should have provided him the addresses of Ronnie and Chris DeLuzio. Neither Ronnie nor Chris DeLuzio were called as witnesses; they were on defense counsel's witness list; and both were present at trial. We find no prejudice to appellant.
 {¶ 72} 7) Defense counsel did not receive the recording of calls made while Seth was in the county jail. "These were not turned over until the trial was underway and Seth Green was testifying."
 {¶ 73} The state offered to get the tapes, the judge agreed, and the state turned over the tapes to defense counsel. The state explained that it had not *Page 21 
turned over the tapes because there was nothing useful on them, i.e. they were not exculpatory. Appellant has not alleged what was on the tapes that he needed. A review of the record shows that there was an overwhelming amount of evidence of appellant's guilt on the tapes. Because use of the tapes would not have changed the outcome of the trial, we find that appellant suffered no prejudice.
 {¶ 74} 9) Defense counsel was not furnished with a transcript of an interview between Detective Gerald Horval and the victim.
 {¶ 75} The statements made to Det. Horval were introduced into evidence, and appellant had the opportunity to cross-examine both Det. Horval and the victim. There is no prejudice from any late disclosure because, due to the evidence in the case, the outcome would not have been different.
 {¶ 76} A review of the alleged discovery violations shows that none of them prejudiced appellant. The judge remedied each alleged violation that he could, and there was no evidence that the violations were intentional or prejudicial to the outcome of the case. Accordingly, appellant's second assignment of error is overruled.
 Hearsay {¶ 77} "III. Defendant was denied his right of confrontation and cross-examination when the court permitted a witness from Revol to testify based on hearsay evidence." *Page 22 
 {¶ 78} Appellant argues that the trial court erred when it allowed Keith Martin, a Revol employee, to testify. More specifically, he alleges that the testimony was hearsay because Martin "had nothing to do with maintaining the records or preparing them." This argument is without merit.
 {¶ 79} It is well established that, pursuant to Evid. R. 104, the introduction of evidence at trial falls within the sound discretion of the trial court. State v. Heinish (1990), 50 Ohio St.3d 231,553 N.E.2d 1026. An abuse of discretion connotes more than an error in law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore, supra.
 {¶ 80} Hearsay evidence is generally inadmissible, unless an exception is determined to be applicable. Under Evid. R. 803(B), [2] "records of regularly conducted activity" are admissible.
 {¶ 81} According to appellant, the business records here may have been admissible, but Martin could not testify about them because he had not been working at Revol when these specific records were prepared. This argument fails because in State v. Davis (1991), 62 Ohio St.3d 326, 343,581 N.E.2d 1362, the Ohio Supreme *Page 23 
Court stated that "the witness need not have personal knowledge of the creation of the particular record in question, and need not have been in the employ of the company at the time the record was made," but, "he must be able to vouch from personal knowledge of the record-keeping system that such records were kept in the regular course of business." Id.
 {¶ 82} Although Martin did not work for Revol when the records were made, he did testify that the records were regularly kept by the company when computers logged calls automatically. He testified that he was familiar with the record-keeping system. Finally, he stated that the records were created immediately and date back to 2006. Accordingly, appellant's third assignment of error is overruled.
 Witness Testimony {¶ 83} "IV. Defendant was denied due process of law when the court allowed Brian Williamson to testify as to his beliefs and what other persons had told him."
 {¶ 84} Appellant argues that the trial court erred when it allowed the victim to testify about "his beliefs and what other persons told him." This argument is without merit.
 {¶ 85} Under Evid. R. 701, "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." *Page 24 
 {¶ 86} In the case at bar, the victim's testimony was rationally based on his perception as the victim of the crime. He testified that he "believed it was" the same person in both confrontations. He stated, "I just believe it was. I just had a feeling that it was the same person." This testimony was admissible. The victim saw the driver of the first car up close when he tried to punch him. Later that day, he saw that same person hanging out of a car window getting ready to shoot at him. It is reasonable that he believed they were the same person based upon his perceptions during both incidents.
 {¶ 87} Appellant also alleges that, when talking to Det. Horval, the victim stated that some of the information he was providing he "heard from other people." Appellant argues that the victim should not have testified about what other people told him. First, we note that appellant told the detective things that other people told him and did not testify about it until defense counsel cross-examined him. We find that because defense counsel brought the issue up at trial, it is disingenuous for him to now allege it was improper testimony.
 {¶ 88} Finally, the victim's testimony about what other people told him or about his beliefs, even if improper, would be considered harmless error. Any error will be deemed harmless if it did not affect the accused's "substantial rights." Otherwise stated, the accused has a constitutional guarantee to a trial free from prejudicial error, not necessarily one free of all error. Where there is no reasonable possibility that the unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal.State v. Lytle (1976), 48 Ohio St.2d 391, *Page 25 358 N.E.2d 623, paragraph three of the syllabus, vacated on other grounds in Lytle v. Ohio (1978), 438 U.S. 910, 98 S.Ct. 3135,57 L.Ed.2d 1154.
 {¶ 89} Veronica testified that the driver of the first car and the passenger of the second car were the same person. She identified the driver of the second car as Seth and, in turn, Seth identified the shooter as appellant. Because there was other evidence of appellant's identity, it is not necessary to rely on the victim's testimony. Accordingly, appellant's fourth assignment of error is overruled.
 Impeaching Statements {¶ 90} "V. Defendant was denied due process of law when the court admitted the entirety of impeaching statements."
 {¶ 91} Appellant argues that the trial court erred when it admitted the statements of Veronica and the victim. This argument is without merit.
 {¶ 92} The statements were used to impeach the witnesses. Thereafter, both statements, in their entirety, were entered into evidence.
 {¶ 93} "It is the generally accepted view that a prior inconsistent statement is only admissible to impeach the declarant and should not be taken into evidence to prove the truth of the matter asserted. Ohio has long adhered to this general principle. Of particular importance to this case, the Ohio Supreme Court has said that `when taken by surprise by the adverse testimony of its own witness *** the state may interrogate such witness concerning his prior inconsistent *** statement *** for the purpose of refreshing the recollection of the witness, but not for the purpose of offering substantive evidence against the accused.' State v.Dick (1971), *Page 26 27 Ohio St.2d 162, 165, 271 N.E.2d 797, 799 (quoting State v. Duffy (1938),134 Ohio St. 16, 17, 15 N.E.2d 535, 536). Indeed, to allow prior inconsistent statements to be considered for their truth would `allow men to be convicted on unsworn testimony of witnesses — a practice which runs counter to the notions of fairness on which our legal system is founded.' Bridges v. Wixon (1945), 326 U.S. 135, 153, 65 S.Ct. 1443,1452, 89 L.Ed. 2103." State v. English, 2nd Dist. No. 21915,2007-Ohio-5979, ¶ 12.
 {¶ 94} As discussed above, prior inconsistent statements are only admissible to impeach a witness and ordinarily are not meant to be admitted in their entirety. We find that even if the trial court should not have admitted the statements to the jury, any error is harmless.
 {¶ 95} First, we note that the judge told the jury that "the statements were not given under oath or subject to cross-examination when they were made and should be viewed with caution." There is no evidence that the outcome of the trial would have been different if the judge had not admitted the statements. Veronica testified that the same person who drove the first car that tried to run over the victim was the passenger in the second car who shot him. Also, Seth testified that appellant was the shooter and had asked him for help in retaliation. Based upon this testimony alone, the jury could have found that appellant was the shooter. Accordingly, appellant's fifth assignment of error is overruled.
 Cumulative Error {¶ 96} "VI. Defendant was denied a fair trial by reason of cumulative errors." *Page 27 
 {¶ 97} Appellant argues that he was denied a fair trial due to cumulative errors. This argument is without merit.
 {¶ 98} As the Ohio Supreme Court held in State v. Madrigal,87 Ohio St.3d 378, 398, 2000-Ohio-448, 721 N.E.2d 52: "In order even to consider whether `cumulative' error is present, [the court] would first have to find that multiple errors were committed in [the] case." The Ohio Supreme Court is clear in its holding that, in order to find cumulative errors, there must first be a showing that errors in fact occurred. Id.
 {¶ 99} Within this assignment of error, appellant generally alludes to the "numerous misconduct, improper evidence, and lack of proper discovery" as the cumulative effect that deprived appellant of a fair trial. Having found, under our analysis of previous assignments of error above, that any alleged errors either did not exist or were not prejudicial, we find appellant's general argument here unpersuasive.
 {¶ 100} Appellant is more specific in demonstrating the existence of cumulative error when he alleges that Det. Morgan testified about a taped interview he conducted with Ms. Upchurch and in that testimony improperly discussed her credibility. Det. Morgan stated that something Ms. Upchurch stated was "completely untrue."
 {¶ 101} The trial court corrected the improper testimony when it sustained appellant's objections and then instructed the jury that it had to *Page 28 
determine witness credibility by considering "the consistency of the witness's testimony with other known facts in the case." The court also stated to the jury, "you are instructed that you are not bound to believe something to be a fact simply because it was testified to by a witness."
 {¶ 102} We find that the trial court appropriately sustained
appellant's objections and then gave sound jury instructions on how the jurors were to evaluate witness testimony, and any alleged error was mitigated. Accordingly, appellant's sixth assignment of error is overruled.
 Alibi {¶ 103} "VII. Defendant was denied due process of law when the court refused to give any instruction concerning alibi."
 {¶ 104} Appellant argues that the trial court erred when it failed to give a jury instruction on alibi. This argument is without merit.
 {¶ 105} "Where a defendant files a timely notice of alibi, presents evidence to support the contention, and relies on it as his sole defense, this court has held that a trial court's failure to instruct the jury on alibi violates the mandate of R.C. 2945.11, whether or not the defendant requests such instruction. So long as the defense is supported by testimony, the court has a duty to give an instruction, and failure to do so is plain error pursuant to Crim. R. 52(B). State v.Mitchell (1989), 60 Ohio App.3d 106, 108, 574 N.E.2d 573. *Page 29 
 {¶ 106} "This court has subsequently held, however, that though a failure to instruct a jury on the defense of alibi is error even if not requested, it is plain error only if the instruction would have altered the outcome of the case or if its omission caused a manifest miscarriage of justice." Id. "As the evidence, including that of the defendant's own witnesses, tended to contradict the defendant's alibi, it was not unreasonable for a jury to disbelieve the alibi and find the defendant guilty beyond a reasonable doubt." Id. at 109.
 {¶ 107} In the case at bar, appellant's ex-girlfriend, Dawn Upchurch, testified that appellant could not have committed this crime because he was with her at her home that night, but there is other evidence that contradicted this alibi.
 {¶ 108} Veronica and Joshua testified that Seth went out to meet appellant. Seth corroborated this information and stated that he met appellant to retaliate against the victim. Seth also stated that appellant wore a blue bandana, which corroborated Veronica's testimony that the shooter wore a blue bandana, and police found a blue bandana outside the car.
 {¶ 109} Cell phone records detailed appellant's role in this crime. He called Seth for help with the retaliation, he called Upchurch for a ride after fleeing Seth's car, and he called Joshua to pick up the discarded weapon. Upchurch attempted to bolster appellant's alibi and discredit the cell phone evidence by stating that appellant had left his cell phone with his brother-in-law, *Page 30 
Thomas Sweany. Sweany testified that he had appellant's cell phone and was using it to make calls while working as a "repo man."
 {¶ 110} In light of the fact that all of the calls made and received by appellant's cell phone coincided with the events of the crime that evening, and none of the calls had anything to do with Sweany or his job as a repo man, we find that the evidence does not support appellant's alibi. Giving the instruction would not have changed the outcome of the case, and the trial court was not required to instruct the jury. Accordingly, appellant's seventh assignment of error is overruled.
 Co-Defendant's Guilty Plea {¶ 111} "VIII. Defendant was denied due process of law when the court would not instruct the jury that guilty pleas by co-defendant could not be considered evidence of defendant's guilt."
 {¶ 112} Appellant argues that the trial court erred when it refused to give defense counsel's requested instruction on the weight of Seth's guilty plea. This argument is without merit.
 {¶ 113} "In reviewing jury instructions upon appeal, we must examine the specific charge at issue in the context of the entire charge, not in isolation. State v. Thompson (1987), 33 Ohio St.3d 1, 13,514 N.E.2d 407. Jury instructions are within the trial court's discretion, which we will not disturb absent an abuse of that discretion. State v.Guster (1981), 66 Ohio St.2d 266, *Page 31 
271, 20 Ohio Op. 3d 249, 421 N.E.2d 157." State v. Jackson, Cuyahoga App. No. 80879, 2002-Ohio-5851, ¶ 37.
 {¶ 114} "A `criminal defendant is entitled to have the trial court give complete and accurate jury instructions on all the issues raised by the evidence.' State v. Sneed (1992), 63 Ohio St.3d 3, 9,584 N.E.2d 1160. A requested jury instruction should ordinarily be given if it is a correct statement of law applicable to the facts in the case and it is not covered by the general charge. Id. The trial court is not required to give a proposed jury instruction in the exact language requested by its proponent, even if it properly states an applicable rule of law, so long as the substance of the request is included in the instructions which are given." Jackson, supra, at ¶ 49.
 {¶ 115} Although the trial court may not have given the exact instruction requested by appellant, it did tell the jury that evidence of a witness's prior convictions was not to be used for anything but "testing the witness's credibility or believability, and the weight to be given to the witness's testimony." We find that this is a sufficient instruction. Accordingly, appellant's eighth assignment of error is overruled.
 Firearm {¶ 116} "IX. Defendant was denied due process of law when the court would not define for the jury the underlying felony necessary for the five year firearm specification." *Page 32 
 {¶ 117} Appellant argues that the trial court erred when it "would not define for the jury the underlying felony necessary for the five year firearm specification." This argument is without merit.
 {¶ 118} The transcript shows that the trial court charged the jury on the felonious assault counts. The judge stated: "Before you can find the defendant guilty of felonious assault in Count 1, you must find beyond a reasonable doubt that *** the defendant did knowingly cause serious physical harm to Brian Williamson." The court also defined "knowingly." Thereafter, the court stated: "If you find the defendant is guilty of felonious assault as charged in Count 1 of the indictment, it is your duty to deliberate further and to decide additional factual questions, that is, the three firearm specifications. *** If you find the defendant not guilty of felonious assault *** you need not consider or decide the additional questions."
 {¶ 119} Clearly, the trial court explained to the jury that a finding of guilt on the firearm specifications was conditioned upon first finding guilt on felonious assault. Accordingly, appellant's ninth assignment of error is overruled.
 {¶ 120} "X. Defendant was denied due process of law when he was convicted of a firearm specification which required a consecutive sentence and did not require any culpable mental state." *Page 33 
 {¶ 121} Appellant argues that the bill of particulars did not identify the underlying felony to support the five-year-firearm specification, did not allege a culpable mental state, and did not define the provisions of R.C. 2923.161. These arguments are without merit.
 {¶ 122} Appellant's first argument is that the indictment did not identify the underlying felony to support the five-year firearm specification. We disagree.
 {¶ 123} Under R.C. 2941.146, "Imposition of a mandatory five-year prison term upon an offender *** for committing a felony that includes, as an essential element, purposely or knowingly causing or attempting to cause the death of or physical harm to another and that was committed by discharging a firearm from a motor vehicle other than a manufactured home is precluded unless the indictment, count in the indictment, or information charging the offender specifies that the offender committed the offense by discharging a firearm from a motor vehicle other than a manufactured home." The prosecution must prove that appellant committed a felony that includes purposely or knowingly causing or attempting to cause the death or physical harm of another, from a motor vehicle.
 {¶ 124} In the case at bar, the indictment clearly indicates which specifications go with the crime alleged. Counts Two and Three charged felonious assault. Count Two states that appellant "did knowingly cause serious *Page 34 
physical harm to Brian Williamson." Count Two states that appellant "knowingly did cause or attempt to cause physical harm to Brian Williamson by means of a deadly weapon or dangerous ordnance, to-wit: firearm, as defined in Section 2923.11 of the Revised Code." Accordingly, we find that the indictment did clearly set forth the underlying felony.
 {¶ 125} Appellant's second argument is that the indictment did not allege a culpable mental state. We disagree because a gun specification is a strict liability offense that requires no mental state.
 {¶ 126} "The mental state of the offender is a part of every criminal offense in Ohio, except those that plainly impose strict liability."State v. Colon, 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, ¶ 12. In State v. Swiger (Apr. 3, 1991), Summit App. No. 14651, the court held that firearm specifications are strict liability offenses. In view of this, the indictment does not need to allege a mental state.
 {¶ 127} Appellant's third argument is that the indictment did not define the provisions of R.C. 2923.161. We disagree because R.C. 2923.161 does not apply to this case. R.C. 2923.161 involves "improperly discharging firearm at or into habitation; school-related offenses," which is irrelevant to this case. Accordingly, appellant's tenth assignment of error is overruled.
 Allied Offenses *Page 35 {¶ 128} "XI. Defendant was denied due process of law when the court imposed a sentence for a merged felonious assault verdict."
 {¶ 129} Appellant argues that the trial court erred when it imposed a sentence for the merged felonious assault verdict. We find merit in this argument.
 {¶ 130} In the transcript, the trial court merged the felonious assault counts. The court stated: "There is a mandatory term — and as to the other felonious assault, obviously that merges in." Neither party disputes that the trial court merged the counts. Appellant argues that, because the counts merged, the trial court should have only sentenced him to one sentence, but instead sentenced him twice. The state argues that "at no point did the trial court indicate that Greene was sentenced for the second count." In light of the trial court's supplemental entry, this is incorrect. Appellant was sentenced on the second count.
 {¶ 131} As outlined in the facts of this opinion, the trial court's first sentencing entry sentences appellant to eight years for felonious assault, but does not indicate which counts of felonious assault. On remand from this court, on November 13, 2008, the trial court clarified and explained that appellant was sentenced to "eight years as to Counts Two and Three, Felonious Assault *** to be served concurrently." *Page 36 
 {¶ 132} Under R.C. 2941.25(A), "Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."
 {¶ 133} The trial court has already determined that the offenses are allied; therefore, we need not make that analysis. Having so found the counts to be allied offenses, the trial court erred in sentencing appellant on both counts. The trial court must merge the convictions and sentence appellant on only one. Accordingly, appellant's eleventh assignment of error is sustained.
 {¶ 134} "XII. Defendant was denied due process of law and subjected to unconstitutional multiple punishments when he was consecutively sentenced for the same firearm."
 {¶ 135} Appellant argues that the trial court erred when it sentenced him to consecutive sentences for the same firearm. More specifically, he alleges that the three-and five-year firearm specifications should have merged. This argument is without merit.
 {¶ 136} Under R.C. 2929.14(D)(1)(c), "if a court imposes an additional prison term on an offender under [R.C. 2941.161] relative to an offense, the court also shall impose a prison term under [R.C. 2914.145] relative to the same offense, provided the criteria specified in that division for imposing an additional prison term are satisfied relative to the offender and the offense." *Page 37 
 {¶ 137} Finally, under R.C. 2929.14(E)(1)(a), "if a mandatory prison term is imposed upon an offender pursuant to [R.C. 2914.145] for having a firearm on or about the offender's person or under the offender's control while committing a felony, if a mandatory prison term is imposed upon an offender pursuant to [R.C. 2941.161] for committing a felony specified in that division by discharging a firearm from a motor vehicle, or if both types of mandatory prison terms are imposed, the offender shall serve any mandatory prison term imposed under either division consecutively to any other mandatory prison term imposed undereither division or under division (D)(1)(d) of this section, consecutively to and prior to any prison term imposed for the underlying felony pursuant to division (A), (D)(2), or (D)(3) of this section or any other section of the Revised Code, and consecutively to any other prison term or mandatory prison term previously or subsequently imposed upon the offender." (Emphasis added.)
 {¶ 138} Clearly, under R.C. 2914(D)(1)(c), the trial court may impose a term of three years for a firearm specification under R.C. 2914.145 in addition to a term of five years under R.C. 2941.161. Under R.C. 2929.14(E)(1)(a), consecutive sentences are permissible. Accordingly, appellant's twelfth assignment of error is overruled.
 {¶ 139} Judgment affirmed in part, and reversed and remanded as to Assignment of Error XI. *Page 38 
 {¶ 140} This cause is affirmed in part, reversed in part, and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellant and appellee share the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, P.J., and PATRICIA ANN BLACKMON, J., CONCUR.
[1] R.C. 2945.71 states in pertinent part: "(C) A person against whom a charge of felony is pending: (1) Notwithstanding any provisions to the contrary in Criminal Rule 5(B), shall be accorded a preliminary hearing within fifteen consecutive days after his arrest if the accused is not held in jail in lieu of bail on the pending charge or within ten consecutive days after his arrest if the accused is held in jail in lieu of bail on the pending charge; (2) Shall be brought to trial within two hundred seventy days after his arrest. *** (E) For purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days. This division does not apply for purposes of computing time under division (C)(1) of this section."
[2] "A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term `business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit." Evid. R. 803(6). *Page 1