[Cite as *State v. Miller*, 2013-Ohio-5621.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO

      Plaintiff-Appellee

v.

JAMES D. MILLER

      Defendant-Appellant

Appellate Case No.    25504

Trial Court Case No.   2012-CR-1553

(Criminal Appeal from
 Common Pleas Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 20th day of December, 2013.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by KIRSTEN A. BRANDT, Atty. Reg. No. 0070162, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

WILLIAM O. CASS, JR., Atty. Reg. No. 0034517, 135 West Dorothy Lane, Suite 209, Kettering, Ohio 45429
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1}    Defendant-Appellant, James D. Miller, appeals from his conviction for Felony Murder and the predicate offense of Felonious Assault following a jury trial.  Miller contends that the trial court erred in failing to instruct the jury on the lesser included offenses of Reckless Homicide and Involuntary Manslaughter.  He also claims that the trial court erred in admitting a prior inconsistent statement to the jury as substantive evidence.  Additionally, he argues that his conviction was against the manifest weight of the evidence, because there was insufficient evidence to prove that he committed the predicate offense of Felonious Assault.

{¶ 2}    We conclude that the trial court did not err in failing to instruct the jury on the lesser included offenses of Reckless Homicide and Involuntary Manslaughter.  Based on the evidence in the record, no reasonable jury could have found Miller not guilty of the greater offense of Felony Murder, but guilty of the lesser included offense of Reckless Homicide and/or Involuntary Manslaughter.  We further conclude that the trial court erred in admitting a prior inconsistent statement to the jury, but that such error was harmless and did not affect the outcome of trial.  Additionally, Miller's conviction for Felonious Assault was not against the manifest weight of the evidence.  The evidence establishes that Miller knowingly caused physical harm to the victim by means of a deadly weapon.  Accordingly, there was sufficient evidence to convict Miller of Felonious Assault as the predicate offense to Felony Murder.

## I.   Facts and Course of Proceedings

{¶ 3}    On June 11, 2012, James D. Miller was indicted on one count of Felony Murder under R.C. 2903.02(B) as a proximate result of committing Felonious Assault.   The indictment also included a three-year firearm specification.   Miller pled not guilty and a jury trial took place

on October 15, 2012.   The following information was elicited at trial.

{¶ 4}    On April 9, 2012, Renaldo "Woody" Woodbury was shot in the head and killed on the front porch of a duplex located at 47/49 Forest Glen Avenue Dayton, Ohio.  Renaldo lived at 47 Forest Glen with his girlfriend and the mother of his child, Holly McReynolds. Miller was Holly's 17-year-old brother, and he had been living with Holly and Renaldo for approximately three weeks.  Holly and Miller's mother,  Denise Miller, and their uncle, Alger Wilkins, were also living at 47 Forest Glen on a temporary basis.

{¶ 5}    On the morning of Renaldo's shooting, Denise drove Miller to see his girlfriend, Arielle Johnson.  Denise dropped Miller off at Arielle's apartment around 8:30 a.m.  Miller stayed at Arielle's apartment until 1:00 p.m., and then went to visit a friend named Chicago, who lived across the street from Arielle.

{¶ 6}    After dropping Miller off at Arielle's, Denise went searching for a job and a new apartment.  She returned to 47 Forest Glen around 4:00 or 5:00 p.m.  When Denise returned, Renaldo and Holly told her that they wanted Miller to move out, because they had a problem with the friends he was inviting into their home.  In response, Denise packed some of Miller's belongings, and called his cell phone to inform him that he was going to have to move.

{¶ 7}    At 4:33 p.m., Arielle received a text message from Miller saying, "Can I get $2 or some change, me and big bra are trying to get a box of bullets, I'll be honest."  Trans. Vol. II (Oct.16, 2012), p. 334, ln. 9-10.  Shortly thereafter, Miller stopped by Arielle's apartment and she gave him a few dollars.  At 8:56 p.m., Miller texted Arielle again saying, "I love you. Whatever happens tonight, that will never change."  *Id.* at 338, ln. 3-4.  Around 9:30 p.m., Miller sent a third text message to Arielle saying, "I'm about to do something very permanent."

*Id.* at 339, ln. 13-14.   Arielle was on the phone and did not see Miller's third text message right away.

{¶ 8}     Between 9:00 and 9:30 p.m., Denise picked Miller up at Chicago's apartment and drove him back to 47 Forest Glen.   When Denise and Miller arrived at 47 Forest Glen, Renaldo and Alger were sitting on the front porch smoking cigarettes.   Denise testified that as she and Miller approached the front porch of the duplex, Renaldo began speaking to Miller in an aggressive tone and they started arguing.   She said that Miller and Renaldo remained on opposite sides of a rail that was located in the middle of the front porch.   According to Denise, Miller and Renaldo were moving around on the porch and Alger was trying to get in between them, but no one made physical contact or fought.

{¶ 9}     Denise testified that she was standing by a pillar on the porch when she heard a gunshot and saw Renaldo collapse.   She claimed that she never saw Miller pull out a gun or shoot Renaldo.   The State impeached her testimony at trial with a prior statement she had written for police stating,   "And out of nowhere, my son pulled a gun out and shot him."   *Id.* at 461, ln. 5-10.   Denise also admitted that she told 911 her son shot Renaldo.   *Id*. at 456, ln. 17-21.

{¶ 10}   Alger Wilkins testified that he was standing in between Miller and Renaldo on the front porch as they were arguing.   He remembered that Renaldo was standing in front of 49 Forest Glen behind a rail that divided the front porch, and Miller was standing on the other side of the rail in front of 47 Forest Glen.   Alger claims that he did not touch Miller or Renaldo, and that Miller and Renaldo did not engage in any physical contact with each other.   According to Alger, Renaldo never threatened Miller, but Miller said,   "I'll smoke you fool" to Renaldo.   *Id*. at 518, ln. 1-3.

{¶ 11}   After Miller threatened Renaldo, Alger saw Miller pull out a gun from his waist and point it at Renaldo.   Alger tried to get the gun from Miller, but Miller kept moving the gun out of his way to keep him from reaching it.   During this time, Alger observed that the hammer of the gun had already been cocked.   Alger claims he saw Renaldo's hands come over his shoulder toward Miller's gun when the gun went off.   Alger grabbed the gun from Miller's hands as it went off.   After the gun fired, Alger followed Miller off the porch to chastise him about having a gun.   Alger did not realize that Renaldo had been shot until he heard Holly scream and turned to see Renaldo lying on the porch.    At that moment, he saw Miller run away from 47 Forest Glen.   Alger gave the gun to Denise and ran after Miller, but was unable to catch him.

{¶ 12}   Betty Asamoah, a neighbor who resides at 55 Forest Glen, observed the shooting while standing outside her house.   Betty testified that Holly, Denise, Alger, Renaldo, and Miller were standing on the front porch of 47/49 Forest Glen while Renaldo and Miller were arguing.   Specifically, Betty heard Renaldo tell Miller to leave his house, get off the porch, and to stop being disrespectful.   Thereafter, she heard Holly tell Miller to follow Renaldo's instructions, but Miller said he was not going anywhere.   Betty then heard Miller tell Renaldo, "I'll shoot your ass" or "Shut the f**k up before I shoot your ass."   *Id*. at 273, ln. 12;   297, ln. 18-25.   After his threat, Betty saw Miller point a gun straight at Renaldo and shoot him.   Betty testified that Renaldo never came at Miller and that the two never engaged in a physical struggle.   In fact, Betty said that Miller and Renaldo were not close enough to touch each other.   According to Betty, there was no movement on the porch and Alger never attempted to separate them.   She said Renaldo and Miller simply stood on the porch and yelled back and forth while everyone

watched.

{¶ 13}   Betty, who is a registered nurse, ran to the porch to provide medical assistance to Renaldo after he was shot.   By the time she reached the porch Miller had run away.   In order to attempt to stop Renaldo's bleeding, Betty placed a blanket over Renaldo's face where he had been shot.   Betty detected a slight pulse at first, but Renaldo eventually died in her arms.

{¶ 14}   Around 10:00 p.m., Arielle Johnson saw Miller's third text message saying that he was going to do "something very permanent."   The message worried her, so she called Miller on his cell phone.   When Miller picked up the phone, the first thing Arielle heard was a female scream and a male yelling "Get back here."   *Id*. at 340, ln. 21-25.   She then heard Miller say, "I shot him."   *Id.* at 341, ln. 21-25.   Arielle asked what he meant, and Miller said, "I shot Woody."   *Id*. at 324, ln. 13-16.   Miller asked Arielle to hold on the line, and as she was holding, she heard wind and running for about three minutes.   When Miller got back on the line he said, "I'll call you back.   I love you."   *Id.* at 343, ln. 12-13.   Miller then hung up and Arielle never heard back from him.

{¶ 15}   After hearing a physical description of Miller over the radio, Officers Walter Evans and Kyle Dickerson of the Dayton Police Department spotted Miller by the door of a Taco Bell in the 4200 block of North Main Street.   As they pulled to the curb and exited the police cruiser, Officer Dickerson motioned for Miller to stop.   Instead of stopping, Miller ran, and Officer Dickerson pursued him on foot.   The officer eventually caught Miller and arrested him.

{¶ 16}   Meanwhile, Officer Craig Stiver of the Dayton Police Department recovered the gun that killed Renaldo from the front porch of 47 Forest Glen.   The gun was identified as a Ruger .22 caliber pistol.   It is a single action gun that requires the shooter to manually cock the

hammer before firing. The gun was found with five live bullets and one spent casing.

{¶ 17} Russell Uptegrove, a forensic pathologist, performed an autopsy on Renaldo's body, and testified that the cause of death was a "distant penetrating gunshot wound to the head." Trans. Vol. I. (Oct. 15, 2012), p. 232, ln. 22-23. Specifically, Renaldo was shot just beneath his right eye. Uptegrove stated that there was no trauma on Renaldo's hands, which indicates that there was no physical altercation or struggle prior to death. Based on the gunshot wound, Uptegrove stated that the shooter was at least 18 to 24 inches away from Renaldo.

{¶ 18} At the close of trial, Miller objected to the admission of the prior written statement used to impeach Denise Miller. The trial court overruled the objection on grounds that it was a properly authenticated prior inconsistent statement. Miller also requested that the lesser included offenses of Reckless Homicide and Involuntary Manslaughter, with the underlying offense of Aggravated Menacing, be included in the jury instructions. The trial court found that there was no evidence to support the lesser included offenses, and denied Miller's request.

{¶ 19} After considering all the evidence, the jury found Miller guilty of Felony Murder as a proximate result of committing Felonious Assault. The jury also concluded that Miller possessed a firearm while committing the offense. At sentencing, Miller received a prison term of fifteen years to life for the Felony Murder conviction and three consecutive years for the firearm specification.

{¶ 20} Miller now appeals from his conviction.

## II. Did the Trial Court Err in Failing to Instruct the Jury on Lesser Included Offenses?

**{¶ 21}** Miller's First Assignment of Error is as follows:

The Court Erred When it Denied the Appellant's Request for Jury Instructions on Lesser Included Offenses.

**{¶ 22}** Under this assignment of error, Miller argues that the trial court erred in failing to instruct the jury on the lesser included offenses of Reckless Homicide and Involuntary Manslaughter with the predicate offense of Aggravated Menacing.

**{¶ 23}** "The question of whether a particular offense should be submitted to the finder of fact as a lesser included offense involves a two-tiered analysis." (Citation omitted.) *State v. Deanda*, 136 Ohio St.3d 18, 2013-Ohio-1722, 989 N.E.2d 986, ¶ 6. "The first tier * * * is a purely legal question, wherein we determine whether one offense is generally a lesser included offense of the charged offense." *Id.*, citing *State v. Kidder*, 32 Ohio St.3d 279, 281, 513 N.E.2d 311 (1987). "The second tier looks to the evidence in a particular case and determines whether ' " a jury could reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser included offense." ' " *Id.,* quoting *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889, ¶ 13, quoting *City of Shaker Hts. v. Mosely*, 113 Ohio St.3d 329, 2007-Ohio-2072, 865 N.E.2d 859, ¶ 11.

**{¶ 24}** "[A] charge on the lesser offense is required 'only where the evidence presented at trial would reasonably support both an acquittal of the crime charged and a conviction upon the lesser included offense.' " *State v. Trimble,* 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 192, quoting *State v. Thomas,* 40 Ohio St.3d 213, 533 N.E.2d 286 (1988), paragraph two of the syllabus.

**{¶ 25}** "The trial court must view the evidence in the light most favorable to the

defendant when deciding whether to instruct the jury on a lesser included offense." *Id*., citing *State v. Campbell,* 69 Ohio St.3d 38, 47–48, 630 N.E.2d 339 (1994). "The lesser-included-offense instruction is not warranted every time 'some evidence' is presented to support the lesser offense." *Id.,* citing *State v. Shane*, 63 Ohio St.3d 630, 632, 590 N.E.2d 272 (1992). "Rather, a court must find 'sufficient evidence' to 'allow a jury to *reasonably* reject the greater offense and find the defendant guilty on a lesser included (or inferior degree) offense.' (Emphasis sic.)" *Id*., quoting *Shane* at 632–633.

{¶ 26} In this case, the first tier of the analysis is not in dispute, because the State concedes that Involuntary Manslaughter and Reckless Homicide are lesser included offenses of Murder. *See Thomas* at 216 ("Involuntary manslaughter * * * is a lesser included offense of murder * * *"); *Trimble* at ¶ 191 ("reckless homicide is a lesser included offense of felony murder").

{¶ 27} With respect to the second tier of the analysis, we must determine whether a jury could reasonably find Miller not guilty of the greater offense of Felony Murder based on the evidence presented at trial. Felony Murder is codified in R.C. 2903.02(B), which states, "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *."

{¶ 28} The predicate offense of violence to Miller's Felony-Murder charge is Felonious Assault, a second degree felony. R.C. 2903.11(D)(1)(a). Felonious Assault occurs when a person "knowingly * * * cause[s] or attempt[s] to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." R.C. 2903.11(A)(2).

{¶ 29} "A person acts knowingly, regardless of his purpose, when he is aware that his

conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B)

{¶ 30} Miller contends that the evidence, when viewed in a light most favorable to him, establishes that he did not "knowingly" cause physical harm to Renaldo. He claims that the jury could have found that his gun discharged unintentionally when Renaldo and/or Alger tried to take it from him. Miller also relies on Betty Asamoah's written statement that Miller yelled, "Shut the f**k up before I shoot your ass." He claims that the phrasing of his threat indicates the shooting was unintentional.

{¶ 31} The evidence cited by Miller is insufficient to allow the jury to reasonably reject the greater offense of Felony Murder with the predicate offense of Felonious Assault. The record establishes that approximately five hours before shooting Renaldo, Miller sent a text message to his girlfriend requesting money to buy bullets. An hour before the shooting, Miller sent her a second text message indicating that something was going to happen that night. Thirty minutes later, Miller sent her a third text message saying that he was "about to do something very permanent." Immediately prior to the shooting, Miller directly commented on his intention to shoot Renaldo and pointed his fully loaded gun directly at him. The hammer of the gun was already cocked back and ready to fire. When Alger Wilkins attempted to grab the gun, Miller moved out of his way and shot Renaldo. Every eyewitness who testified claimed that there was no physical altercation or struggle between Miller, Renaldo, and Alger. Accordingly, the evidence does not indicate that the gun discharged accidentally due to a struggle.

{¶ 32} Even when viewing the facts in a light most favorable to Miller, the text

messages, Miller's comments, and his action of loading and cocking the gun, indicate that Miller was aware that his conduct would probably result in Renaldo being physically harmed. Furthermore, the evidence demonstrates that it was Miller's intention to shoot Renaldo, not just threaten him.

{¶ 33} Based on the evidence in the record, no reasonable jury could have found Miller not guilty of the greater offense of Felony Murder, but guilty of the lesser included offense of Involuntary Manslaughter and/or Reckless Homicide. Accordingly, the trial court did not err in failing to instruct the jury on the lesser included offenses.

{¶ 34} Miller's First Assignment of Error is overruled.

### III. Did the Trial Court Err in Allowing the Written Statement of Denise Miller to Be Submitted to the Jury?

{¶ 35} Miller's Second Assignment of Error is as follows:

The Court Erred When It Allowed the Written Statement of Denise Miller

to Go Back to the Jury.

{¶ 36} Under this assignment of error, Miller contends that the written statement of Denise Miller should not have been submitted to the jury as substantive evidence, because it was only used as a prior inconsistent statement to impeach her testimony.

{¶ 37} In *State v. Dearmond*, 179 Ohio App.3d 63, 2008-Ohio-5519, 900 N.E.2d 692 (2d Dist.), we stated the following regarding prior inconsistent statements:

"It is the generally accepted view that a prior inconsistent statement is only

admissible to impeach the declarant and should not be taken into evidence to

prove the truth of the matter asserted. Ohio has long adhered to this general principle. * * * [T]he Ohio Supreme Court has said that ' "when taken by surprise by the adverse testimony of its own witness, * * * the state may interrogate such witness concerning his prior inconsistent * * * statement * * * for the purpose of refreshing the recollection of the witness, but not for the purpose of offering substantive evidence against the accused." ' *State v. Dick* (1971), 27 Ohio St.2d 162, 165, 56 O.O.2d 101, 271 N.E.2d 797, 799 (quoting *State v. Duffy* (1938), 134 Ohio St. 16, 17, 11 O.O. 383, 15 N.E.2d 535, 536). Indeed, to allow prior inconsistent statements to be considered for their truth would 'allow men to be convicted on unsworn testimony of witnesses—a practice which runs counter to the notions of fairness on which our legal system is founded.' *Bridges v. Wixon* (194[5]), 326 U.S. 135, 153, 65 S.Ct. 1443, 89 L.Ed. 2103." *State v. English*, Montgomery App. No. 21915, 2007-Ohio-5979, 2007 WL 3309637. *Id*. at ¶ 26.

{¶ 38} In this case, the State used Denise Miller's prior inconsistent statement to impeach her testimony that she did not see her son shoot Renaldo. The State was permitted to use her statement solely for witness recollection and subsequent impeachment. The statement was not admissible as substantive evidence. Accordingly, the trial court erred in submitting the written statement to the jury during its deliberation.

{¶ 39} While the trial court erred in submitting the written statement to the jury, we conclude that the error was harmless. "Error in the admission of evidence is harmless if there is no reasonable possibility that the evidence may have contributed to the accused's conviction. In order to hold the error harmless, the court must be able to declare a belief that the error was

harmless beyond a reasonable doubt." (Citations omitted.) *State v. Bayless*, 48 Ohio St.2d 73, 106, 357 N.E.2d 1035 (1976), vacated on other grounds, *Bayless v. Ohio*, 438 U.S. 911, 98 S.Ct. 3135, 57 L.Ed.2d 1155 (1978).

**{¶ 40}** Admitting the prior inconsistent statement to the jury was harmless error because the statement is cumulative evidence of the fact that Miller shot Renaldo. All of the evidence presented at trial establishes that Miller was the shooter. There is no evidence to the contrary. Had the improper statement not been admitted, the jury would have still concluded that Miller was the shooter based on all of the other evidence. As a result, the written statement did not contribute to the conviction. Accordingly, the trial court's error in submitting the statement to the jury was harmless beyond a reasonable doubt.

**{¶ 41}** For the foregoing reasons, Miller's Second Assignment of Error is overruled.

### IV. Was the Appellant's Conviction Against the Manifest Weight of the Evidence?

**{¶ 42}** Miller's Third Assignment of Error is as follows:

The Appellant's Conviction Was Against the Manifest Weight of the Evidence.

**{¶ 43}** Under this assignment of error, Miller contends that his Felony Murder conviction was against the manifest weight of the evidence, because the evidence does not establish that he committed the predicate offense of Felonious Assault. Specifically, Miller claims that the evidence fails to prove that he *knowingly* caused physical harm to Renaldo.

**{¶ 44}** "When a conviction is challenged on appeal as being against the weight of the

evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Hill*, 2d Dist. No. 25172, 2013-Ohio-717, ¶ 8, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "A judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶ 45}** After weighing all of the evidence, reasonable inferences, and witness credibility, we do not find that the jury lost its way and created a manifest miscarriage of justice when it convicted Miller of Felony Murder with the predicate offense of Felonious Assault. Under the First Assignment of Error, we already concluded that Miller's various text messages, comments, and preparation of the gun by loading it and cocking the hammer, establish that he knowingly caused physical harm to Renaldo. Additionally, there is no evidence of a physical altercation or struggle that would have led the jury to believe that the shooting was accidental. Therefore, this is not an exceptional case in which the evidence weighs heavily against finding that Miller committed the predicate offense of Felonious Assault.

**{¶ 46}** Miller's Third Assignment of Error is overruled.


## V. Was the Evidence Insufficient to Support

## the Appellant's Conviction?

**{¶ 47}** Miller's Fourth Assignment of Error is as follows:

The Evidence Was Insufficient to Support the Appellant's Conviction.

{¶ 48}   Under this assignment of error, Miller contends that there was insufficient evidence to prove that he committed Felonious Assault as the predicate offense to Felony Murder.   "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citation omitted.)   *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11.  As a result, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.   *State v. Roberts*, 9th Dist. Lorain No. 96CA006462, 1997 WL 600669, * 2 (Sept. 17, 1997);   *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15.   Because we have already determined that the manifest weight of the evidence establishes that Miller committed the predicate offense of Felonious Assault for his Felony Murder charge, the evidence is also sufficient to support Miller's conviction.

{¶ 49}   Miller's Fourth Assignment of Error is overruled.


# VI.   Conclusion

{¶ 50}   Having overruled Miller's four assignments of error, we hereby affirm the judgment of the trial court.

. . . . . . . . . . . . .

FAIN, P.J., concurs.
HALL, J., concurring:

{¶ 51}   I concur with the analysis and conclusions of my colleagues. I write separately to

address the introduction of defendant's mother's prior inconsistent written statement, "my son pulled a gun out and shot him" (T. 461), after she denied seeing her son shoot Renaldo Woodbury.

{¶ 52}   On appeal the State argued, incorrectly in my view, that mother's prior statement was admissible under Evid.R. 801(D)(1)(c) as a statement of "identification of a person soon after perceiving the person," which is described as "not hearsay." I do not believe this statement was one of identification at all. Mother indicated her son was present on the porch where the shooting occurred, and she clearly knew who her son was. The statement "my son pulled a gun out and shot him" is about what her son did, not about his "identity." Therefore, Evid. R. 801(D)(1)(c) does not apply. Moreover, at trial the State moved to admit the prior written statement because "[w]e impeached her." (T. 586). The State also argued it was used to refresh her memory. There was no mention of Evid.R. 801(D)(1)(c).

{¶ 53}   When a prior inconsistent statement is introduced, in most circumstances it may be considered solely for evaluating the declarant's credibility and not as substantive evidence.[1] Although that nuance may be lost on many a juror, the better practice is to instruct the jury on the limited purpose for admitting the evidence. Here, however, the defense did not request a limiting instruction, which waives any potential error. *State v. Grant*, 67 Ohio St.3d 465, 472, 620 N.E.2d 50 (1993).

{¶ 54}   Nevertheless, I agree that considering the overwhelming evidence against Miller, there was no reasonable probability that admission of the prior inconsistent statement contributed to his conviction. Accordingly, even assuming there was an error, it was harmless beyond

---

[1]  For exceptions, see Evid.R. 607 and Evid.R. 801(D)(1)(a) and (D)(2).

reasonable doubt.

. . . . . . . . . . . . .

Copies mailed to:

Mathias H. Heck
Kirsten A. Brandt
William O. Cass, Jr.
Hon. Dennis J. Adkins