[Cite as *State v. Hudson*, 2020-Ohio-4398.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28535 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-1271 |
| | : | |
| LARRY D. HUDSON, JR. | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 11th day of September, 2020.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by LISA M. LIGHT, Atty. Reg. No. 0097348, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

MARK A. FISHER, Atty. Reg. No. 0066939, 5613 Brandt Pike, Huber Heights, Ohio 45424
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Defendant-appellant, Larry D. Hudson, Jr., appeals from his conviction for one count of domestic violence, a fourth degree felony pursuant to R.C. 2919.25(A) and (D)(3). Raising two assignments of error, Hudson argues that the State's evidence against him was inadequate to support his conviction, and that the trial court erred by imposing the maximum available sentence. We find that Hudson's arguments lack merit, and his conviction is therefore affirmed.

## I. Facts and Procedural History

{¶ 2} On the morning of April 12, 2019, Hudson appeared at the residence of his mother, "Rebecca"; Hudson sometimes resided with her, keeping clothes and receiving mail there. Transcript of Proceedings 41:5-42:12, 44:19-45:2 and 63:7-63:13, Aug. 26 and Sept. 11, 2019. After he arrived, Hudson showered, ate, and went to sleep. *Id.* at 44:23-45:2.

{¶ 3} While Hudson was sleeping, two of Rebecca's friends called on her, and she and her friends consumed alcohol. *See id.* at 44:23-45:6 and 61:21-61:23. Rebecca had a "misunderstanding" with one of the two that apparently resulted in raised voices but no physical altercation. *See id.* at 59:21-60:3 and 62:7-62:24. At some point in the afternoon, Rebecca's two friends left. *See id.* at 44:2-45:12.

{¶ 4} That evening, Rebecca was visited by a third friend, Brian Davenport. *Id.* at 45:7-45:16. Hudson awoke, and joining Rebecca and Davenport, he offered to sell Davenport certain items that he had found in a vacant apartment. *Id.* at 46:4-46:10. Rebecca objected, being concerned about the provenance of the items, and by her account, Hudson attacked her, punching her about the head, face and arms, while Davenport declined to intervene, despite Rebecca's requests for help. *Id.* at 48:5-48:24,

69:1-70:2 and 80:19-82:15. When Rebecca threatened to call the police, Hudson left, and Rebecca went to a neighbor's residence to contact the Dayton Police Department. *See id.* at 48:17-51:25 and 58:14-58:17. Officers responded to Rebecca's residence at approximately 7:30 p.m.; they noticed that Rebecca's left eye and forehead were bruised. *See id.* at 13:19-15:15. Two days later, Rebecca met with a detective, who observed traces of the same injuries. *Id.* at 85:21-87:13.

{¶ 5} On April 23, 2019, a Montgomery County grand jury issued an indictment against Hudson, charging him with one count of domestic violence under R.C. 2919.25(A); the charge was a fourth degree felony pursuant to R.C. 2919.25(D)(3) because Hudson had previously been convicted of domestic violence. The case was tried to a jury on August 26, 2019. Hudson did not testify on his own behalf, but Davenport testified that he did not see Hudson attack Rebecca. *See id.* at 101:16-106:14. The jury found Hudson guilty as charged.

{¶ 6} Hudson appeared for sentencing on September 11, 2019, and the trial court sentenced him to serve 18 months in prison, the maximum penalty for a fourth degree felony. Hudson timely filed a notice of appeal to this court on September 20, 2019.

## II. Analysis

{¶ 7} For his first assignment of error, Hudson contends that:

> THE TRIAL COURT ERRED IN CONVICTING APPELLANT OF DOMESTIC VIOLENCE.

{¶ 8} Hudson argues that his conviction should be reversed because the State failed to produce sufficient evidence to prove his guilt, and because the jury found him guilty contrary to the manifest weight of the evidence. Sufficiency of the evidence "is the

legal standard applied to determine whether * * * the evidence [in a given case] is [adequate] as a matter of law to support the * * * verdict." *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). On review of a challenge to a conviction based on the sufficiency of the evidence, the " 'relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶ 9}** By contrast, in a challenge based on the weight of the evidence, an appellate court considers not only the quantity of the evidence, but the quality of the evidence, as well. (Citation omitted.) *See State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12; *State v. Thigpen*, 2016-Ohio-1374, 62 N.E.3d 1019, ¶ 6 (8th Dist.). Accordingly, the appellate court must review the record; weigh the evidence and all reasonable inferences; consider the credibility of witnesses; and determine whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created a manifest miscarriage of justice warranting a new trial. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *see also State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8. A trial court's "judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Hill* at ¶ 8, quoting *Martin* at 175.

**{¶ 10}** Although the appellate court "must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses," the court

nevertheless "may determine which of several competing inferences suggested by the evidence should be preferred." (Citation omitted.) *State v. Cochran*, 2d Dist. Montgomery No. 27023, 2017-Ohio-216, ¶ 6. A determination that a conviction is supported by the manifest weight of the evidence is also dispositive of the issue of the sufficiency of the evidence, because "a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citation omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11; *State v. Miller*, 2d Dist. Montgomery No. 25504, 2013-Ohio-5621, ¶ 48, citing *McCrary* at ¶ 11.

{¶ 11} To prove Hudson guilty of domestic violence pursuant to R.C. 2919.25(A), the State had to prove that Hudson knowingly caused, or attempted to cause, physical harm to a family or household member. Rebecca's testimony of itself, if believed by the jury, provided sufficient evidence to prove Hudson's guilt of each of the elements of domestic violence. Furthermore, a detective with the Dayton Police Department testified, referring to the records of the Dayton Municipal Court, that Hudson had previously been convicted of domestic violence in Case No. 98-CRB-12154, thereby establishing that the instant violation was a fourth degree felony under R.C. 2919.25(D)(3). Transcript of Proceedings 84:7-84:14 and 89:3-90:10.

{¶ 12} Hudson posits that Rebecca fabricated her allegations against him because she "wanted [him] out of her residence." *See* Appellant's Brief 8-9. He notes that when Rebecca spoke with officers at the scene shortly after the incident, she did not specify the number of times he struck her, and that in her contemporaneous written statement, she did not refer at all to him striking her. *Id.* at 8. During her interview with a detective two

days later, Rebecca stated that Hudson had hit her two or three times, yet at trial, Rebecca testified that Hudson had hit her four or five times. *See* Transcript of Proceedings 80:24-81:23. Hudson argues that these differences among Rebecca's accounts of the incident demonstrate "that there is a question as to whether [he] committed domestic violence against" her, and he emphasizes that Brian Davenport, who had no "incentive to lie in this case," testified that "the alleged incident * * * did not happen." Appellant's Brief 9; Transcript of Proceedings 101:16-106:2. Hudson himself did not testify.

{¶ 13} The verdict suggests that the jury found Rebecca's testimony to be more credible than Davenport's testimony, and this court "must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses." *Cochran*, 2d Dist. Montgomery No. 27023, 2017-Ohio-216, at ¶ 6. Although we "may determine which of several competing inferences suggested by the evidence should be preferred," the evidence here allows for only two competing inferences: one, that Rebecca was injured by a person other than Hudson and fabricated her allegations against him; or two, that Rebecca testified truthfully, meaning that Davenport, for whatever reason, did not testify truthfully. *Id.* The record before us, however, provides no basis for concluding that the jury clearly lost its way in finding the latter inference more credible than the former, particularly in light of the circumstantially corroborating testimony offered by law enforcement personnel.

{¶ 14} On review of the record, we hold that the State presented sufficient evidence to prove Hudson guilty of each of the elements of domestic violence under R.C. 2919.25(A), and furthermore, we hold that the jury did not find Hudson guilty contrary to

the manifest weight of the evidence.    Hudson's first assignment of error is overruled.

{¶ 15} For his second assignment of error, Hudson contends that:

THE TRIAL COURT ERRED IN ITS SENTENCING OF APPELLANT

IN THIS MATTER.

{¶ 16} Hudson argues that the trial court erred by sentencing him to the maximum term of imprisonment for a fourth degree felony.   Under R.C. 2929.11(A), a "court that sentences an offender for a felony shall be guided" by the "overriding purposes" of punishing the offender and "protect[ing] the public from future crime by the offender and others," while "using the minimum sanctions that [it] determines [likely to] accomplish [these] purposes without imposing an unnecessary burden on state or local government resources."   Accordingly, the court must "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution."   *Id.*   R.C. 2929.11(B) adds that a felony sentence "shall be reasonably calculated to achieve the two overriding purposes of felony sentencing * * * commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon [any] victim[s], and consistent with sentences imposed for similar crimes committed by similar offenders."

{¶ 17} Pursuant to R.C. 2929.12(A), in "exercising [its] discretion" to determine "the most effective way to comply with the purposes and principles of sentencing set forth in [R.C.] 2929.11," a court must consider, among other things, a list of nine factors "indicating that [an] offender's conduct [was] more serious than conduct normally constituting" the offense for which the offender was convicted; a list of four factors "indicating that the offender's conduct [was] less serious than conduct normally

constituting the offense"; a list of five factors "indicating that the offender is likely to commit future crimes"; and a list of five factors "indicating that the offender is not likely to commit future crimes." The court "may [also] consider any other factors that are relevant to [fulfilling the] purposes and principles of [felony] sentencing." *Id.*; *see also* R.C. 2929.12(B)-(E).

{¶ 18} A "trial court has full discretion to impose any sentence within the authorized statutory range, and [it] is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.), citing *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraph seven of the syllabus. Even so, the "court must comply with all applicable rules and statutes, including R.C. 2929.11 and R.C. 2929.12." *Id.*, citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 37. On review of a felony sentence, an appellate court may vacate or modify the sentence "only if it determines by clear and convincing evidence that the record [of the case] does not support the trial court's findings under the relevant statutes," or that the sentence "is otherwise contrary to law." *See State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.2d 1231, ¶ 1; *see also* R.C. 2953.08(G)(2). A sentence "is not contrary to law [if it falls] within the statutory range [and the trial court] expressly state[s] that it * * * considered the purposes and principles of sentencing [under] R.C. 2929.11 [and] 2929.12." (Citation omitted.) *State v. Rodeffer*, 2013-Ohio-5759, 5 N.E.3d 1069, ¶ 32 (2d Dist.).

{¶ 19} The trial court confirmed at Hudson's sentencing hearing that it had "consider[ed] the purposes and principles of sentencing [under R.C. 2929.11], [along with]

the seriousness and recidivism factors" listed in R.C. 2929.12. Transcript of Proceedings 140:2-140:4. Although Hudson acknowledges that the court "based [his sentence] on such factors and [his apparent lack of] remorse," he maintains that "[t]here are other factors that should have been considered." Appellant's Brief 10. He argues, specifically, that the court should have imposed a lesser sentence because he did not use a weapon; because "[t]here was no indication of serious physical harm" to Rebecca; because "[t]here was no claim of economic harm"; and because "there were no children present." *Id.*

{¶ 20} Hudson's sentence is within the range authorized by R.C. 2929.14(A)(4), and the trial court expressly stated that it considered the purposes and principles of sentencing. Having considered the evidence and the trial court's rationale, we hold that Hudson has not shown, by citation to clear and convincing evidence, that the sentence imposed by the trial court was not supported by the record. The trial court based the sentence on Hudson's "lengthy record [of] offenses of violence," which the court recited, and Hudson's "showing absolutely no remorse," which is evident from Hudson's own remarks at his sentencing hearing. *See* Transcript of Proceedings 138:8-18 and 139:8-140:8. Hudson's second assignment of error is overruled.

### III. Conclusion

{¶ 21} Hudson has not demonstrated that the evidence against him was quantitatively or qualitatively inadequate to support his conviction, nor has he demonstrated by citation to clear and convincing evidence that the sentence imposed by the trial court was not supported by the record. Therefore, Hudson's conviction is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Lisa M. Light
Mark A. Fisher
Hon. Gerald Parker