[Cite as *State v. Ross*, 2020-Ohio-6958.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28603 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-3024 |
| | : | |
| MARTIN H. ROSS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 30th day of December, 2020.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by SARAH E. HUTNIK, Atty. Reg. No. 0095900, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

ROBERT ALAN BRENNER, Atty. Reg. No. 0067714, P.O. Box 340214, Beavercreek, Ohio 45434
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Defendant-appellant, Martin Ross, appeals from his convictions for one count of aggravated burglary in violation of R.C. 2911.11(A)(1), one count of kidnapping in violation of R.C. 2905.01(A)(4), and one count of rape in violation of R.C. 2907.02(A)(1)(b). Raising two assignments of error, Ross argues that the evidence against him was quantitatively insufficient to support his conviction for rape and qualitatively inadequate to support any of his convictions. We find that Ross's arguments lack merit, and his convictions are therefore affirmed.

## I. Facts and Procedural History

{¶ 2} L.W., who was 11 years old at the time, awoke early in the morning of August 2, 2018, to find a man lying on the floor in her bedroom. The man, afterward identified as Ross, pushed L.W. facedown onto her bed and threatened to "do something" to her if she did not keep quiet. *See* Transcript Vol. I, 107:4-107:6.[1] Ross then raped L.W. by penetrating her anus. *See id.* at 108:4-110:17; *see also* R.C. 2907.01(A) and 2907.02(A)(1).

{¶ 3} On August 13, 2018, a Montgomery County grand jury indicted Ross as follows: Count 1, aggravated burglary, a first degree felony pursuant to R.C. 2911.11(A)(1) and (B); Count 2, kidnapping, a first degree felony pursuant to R.C. 2905.01(A)(4) and (C)(1); and Count 3, rape of a person less than 13 years old, a first

---

[1] Ross's case was tried to the bench on September 30, October 1 and October 2, 2019. The record of the first day and part of the second day is presented in Volume I of the transcript of proceedings before the trial court, which was filed on January 3, 2020, and the record of the balance of the second day is presented in Volume II of the transcript, which was filed with Volume I. The record of the third day of the trial is presented in a separate transcript, without a volume number, which was filed on April 7, 2020; we cite the separate transcript as Volume III, even though it is not paginated as a continuation of Volume I and Volume II.

degree felony pursuant to R.C. 2907.02(A)(1)(b) and (B). The case was tried to the bench, and on October 8, 2019, the trial court found Ross guilty on all counts.

{¶ 4} Ross appeared for sentencing on November 5, 2019. The trial court merged Counts 1 and 2 with Count 3, and sentenced Ross to a term of 10 years to life in prison. On November 7, 2019, the court filed its judgment entry of conviction, and later that day, Ross timely filed a notice of appeal.

## II. Analysis

{¶ 5} Because Ross's assignments of error are closely related, we address them together. For his first assignment of error, Ross contends that:

THE CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF

THE EVIDENCE.

And for his second assignment of error, Ross contends that:

THE CONVICTION FOR RAPE IS BASED ON INSUFFICIENT

EVIDENCE.

{¶ 6} Ross argues, first, that the trial court found him guilty contrary to the manifest weight of the evidence because "[t]here were several inconsistencies in the testimony that raise reasonable doubt about [his] guilt," and because the court "lost [its] way [in interpreting the] DNA evidence." *See* Appellant's Brief 7. Second, Ross argues that the evidence was insufficient to prove that "anal intercourse took place or that anything was inserted into [L.W.'s] anal opening." Appellant's Brief 10.

{¶ 7} Sufficiency of the evidence "is the legal standard applied to determine whether * * * the evidence [in a given case] is [adequate] as a matter of law to support the * * * verdict." *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997), citing

*State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). On review of a challenge to a conviction based on the sufficiency of the evidence, the " 'relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 8} By contrast, in a challenge based on the weight of the evidence, an appellate court considers not only the quantity of the evidence, but the quality of the evidence, as well. *See State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12; *State v. Thigpen*, 2016-Ohio-1374, 62 N.E.3d 1019, ¶ 6 (8th Dist.). Accordingly, the appellate court must review the record; weigh the evidence and all reasonable inferences; consider the credibility of witnesses; and determine whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created a manifest miscarriage of justice warranting a new trial. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *see also State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8. A trial court's "judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Hill* at ¶ 8, quoting *Martin* at 175.

{¶ 9} Although the appellate court "must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses," the court nevertheless "may determine which of several competing inferences suggested by the evidence should be preferred." (Citation omitted.) *State v. Cochran*, 2d Dist. Montgomery No. 27023, 2017-Ohio-216, ¶ 6. A determination that a conviction is supported by the manifest

weight of the evidence is also dispositive of the issue of the sufficiency of the evidence, because "a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citation omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11; *State v. Miller*, 2d Dist. Montgomery No. 25504, 2013-Ohio-5621, ¶ 48, citing *McCrary* at ¶ 11.

{¶ 10} In this case, the trial court convicted Ross for aggravated burglary, kidnapping and rape of a person under 13 years of age. To prove Ross guilty of aggravated burglary, the State had to present evidence showing that: (1) Ross trespassed by force, stealth or deception into L.W.'s residence; (2) at least one person, other than an accomplice of Ross, was in the residence at the time; and (3) Ross inflicted physical harm on L.W. *See* R.C. 2911.11(A)(1). To prove Ross guilty of kidnapping, the State had to present evidence showing that: (1) Ross restrained L.W.'s liberty; (2) Ross's purpose was to engage in sexual activity with L.W. against her will; and (3) L.W. was less than 13 years old at the time. *See* R.C. 2905.01(A)(4). To prove Ross guilty of rape of a person under 13 years of age, the State had to present evidence showing that: (1) L.W. either was not Ross's spouse, or was his spouse but did not reside with him; (2) Ross engaged in sexual conduct with L.W.; and (3) at the time the sexual conduct occurred, L.W. was less than 13 years old, whether or not Ross knew as much. *See* R.C. 2907.02(A)(1)(b).

{¶ 11} At trial, L.W.'s mother testified that Ross never had permission to enter her residence. Transcript Vol. I, 166:5-166:19. Her testimony, along with that of L.W. and L.W.'s cousin, A.B., established that persons other than Ross or an accomplice of his, were present in the residence when Ross gained entry without permission. *Id.* at 106:5-107:12, 111:15-111:21, 160:15-165:5, 187:8-188:5 and 191:13-193:25. L.W.'s

testimony established that Ross inflicted physical harm on her while he was there. *Id.* at 107:3-110:25 and 153:11-153:20; *see also* R.C. 2901.01(A)(3) (defining the term "physical harm"). This evidence sufficed to show Ross's guilt with respect to each of the elements of aggravated burglary.

{¶ 12} L.W. testified that Ross held her down and threatened her to compel her to stay silent. Transcript Vol. I, 108:19-111:3. Furthermore, L.W.'s testimony established that Ross engaged in sexual conduct with her against her will, and that at the time, she was less than 13 years old.[2] *Id.* at 94:7-94:17 and 109:18-110:20. In addition, an expert witness testified that a DNA sample recovered from L.W.'s underwear "matche[d] back to Martin Ross." Transcript Vol. III, 14:5-15:25. This evidence sufficed to show Ross's guilt with respect to each of the elements of kidnapping.

{¶ 13} Given that L.W. was less than 13 years old, she could not legally have been married, meaning that she could not have been Ross's spouse as a matter of law. R.C. 3101.01-3101.02. The evidence, then, sufficed to show Ross's guilt with respect to each of the elements of rape of a person under 13 years of age.

{¶ 14} Ross argues that his convictions should be reversed as being against the manifest weight of the evidence, basing his argument on several purported internal inconsistencies in L.W.'s testimony and several purported inconsistencies among the testimony of L.W., the testimony of A.B., and the testimony of L.W.'s mother. Appellant's Brief 7-8. As well, Ross faults the trial court for mischaracterizing or misunderstanding the testimony offered by an expert witness about the analysis of a DNA sample obtained

---

[2] The term "[s]exual activity" in R.C. 2905.01(A)(4) includes "[s]exual conduct" for purposes of R.C. 2907.02(A)(1)(b). *See* R.C. 2901.01(A) and (C).

from L.W.'s underwear. *Id.* at 8.

{¶ 15} According to Ross, L.W. "identified [him] as the man [on the floor] in her room, but [she] testified that," after the rape, "the man was already gone by the time she got up" from her bed. Appellant's Brief 7. Ross observes further that L.W., whose bedroom was on the second floor of her residence, "testified that she could not see down the stairs from her bed," but "[o]n the other hand," she testified "that she saw the man go down the stairs." *Id.*; *see also* Transcript Vol. I, 103:19-104:2. Ross notes, too, that L.W. "testified that the man stopped and looked at her before he went down the stairs." Appellant's Brief 7.

{¶ 16} Although Ross claims that L.W.'s testimony was internally inconsistent in these respects, his characterization of the testimony is not entirely accurate. For instance, the State had the following exchange with L.W. on redirect examination:

THE STATE: Okay. When [the perpetrator] left, were you still in [your] bed?

L.W.: Yes. Then I got up and went to my mom['s] room.

* * *

THE STATE: By the time you got up, had he already left?

L.W.: Yes.

THE STATE: Okay. * * * Did you---from where you [were] sitting on [your] bed, you [could not] actually see the stairs, right?

L.W.: Yes.

THE STATE: That's---you---

L.W.: No.

THE STATE: ---you can't see the stairs?   Okay.   Did you actually see him go down the stairs?

L.W.: Yes.

THE STATE: You did?

L.W.: Yes.

THE STATE: How'd you see him[,] since you were on the bed?

L.W.: He ran down---he stopped---well, I was looking the way that the stairs is---

THE STATE: Okay.

L.W.: ---and he stopped[;] he looked at me[;] and then he ran down the stairs.

Transcript Vol. I, 152:8-153:6.   Thus, L.W.'s identification of Ross was consistent with her testimony.   After Ross left her bedroom, L.W. saw his face when he turned to look back at her, while she was still lying on her bed.

{¶ 17} L.W.'s description, moreover, included details that were later independently verified.   Specifically, L.W. testified that Ross "had on a cast," which she described as "[a] boot for his leg," and that he was wearing "some gloves," which she described as "[p]lastic" and "[g]reen or blue" in color.   Transcript Vol. I, 111:22-112:11.   Several hours afterward, when an officer with the Dayton Police Department first made contact with Ross, the officer observed that Ross was wearing "a medical boot on one of his legs" and had "green rubber gloves hanging out of one of his pockets."   *Id.* at 249:11-249:21, 251:7-251:21, 253:23-254:10 and 255:9-256:10.   L.W. subsequently identified Ross in a photospread.   Transcript Vol. II, 315:16-319:19 and 332:14-333:22.

{¶ 18} Ross suggests further that L.W. contradicted herself by testifying "that she could not see down the stairs from her bed" and also "that she saw [him] go down the stairs." Appellant's Brief 7. L.W. explained, however, that as somebody "walk[ed] up the stairs, you [could] like see, like—like on the eighth stair, you [could] see them." Transcript Vol. I, 155:3-155:9. In other words, L.W. could not see the bottom of the stairwell from her bedroom, but she could see a person near the top of the stairwell. Conversely, she could have seen Ross walking down the stairs, even though she could not have seen him once he reached the bottom step.

{¶ 19} Additionally, Ross notes that L.W. "testified that her sister was asleep on the [same] bed while [he assaulted L.W.], but [her sister] never woke up." Appellant's Brief 7. L.W. did testify as Ross indicates, yet Ross fails to explain what, if any, significance he attaches to this testimony. *Id.* Presumably, Ross intends to imply that L.W.'s sister could not have slept through the assault, but he makes no attempt to demonstrate that that would have been impossible or even unlikely. *Id.* at 7-8. Similarly, Ross notes that L.W. "testified that she did not call for help," although in making this observation, Ross fails to acknowledge L.W.'s testimony that she was intimidated into staying silent. *Id.*

{¶ 20} Ross also compares one aspect of L.W.'s testimony to that offered by her mother and A.B. *Id.* at 8. L.W. testified that after Ross left, she "got up and went to [her] mom['s] room." Transcript Vol. I, 152:4-152:9. Her mother and A.B., by contrast, testified that once they became aware that something had happened, they went to L.W.'s room, where L.W. had remained after Ross's departure. *See id.* at 176:10-178:5 and 191:25-198:9. On this point, Ross argues correctly that the testimony was inconsistent,

but considered in the context of the record as a whole—which includes consistent, credible evidence that Ross illegally entered L.W.'s residence, restrained her and then raped her—the inconsistency among the descriptions of the minutes immediately afterward could reasonably be characterized simply as mistaken recollections.

{¶ 21} Next, Ross criticizes the trial court's consideration of the DNA evidence obtained from L.W.'s underwear.   In Ross's view, the "trial court asked questions [of the expert witness who testified regarding the DNA evidence] and went from [Ross] 'cannot be excluded' as a possible contributor [to the sample analyzed by the expert] to only [Ross or Ross]'s identical twin could have left the DNA."   Appellant's Brief 8.   That is, Ross faults the trial court for purportedly misunderstanding the expert's testimony.   The expert testified that

> [a]t [her] laboratory, [she and her colleagues] are very conservative in [their] wording.   Anytime [they] state that [they] cannot exclude [a specific person as the source of a given sample], it means that [they] are, in fact, seeing [that person's] DNA present [in] that [sample].   Only, to be conservative, rather than state [that the person's] DNA is present [in the sample], [they] state [that they] cannot exclude that [person], which means that [they] are seeing [the person's] DNA types present [in] the [sample].

Transcript Vol. III, 23:21-24:5.   After listening to the expert's explanation, the trial court asked whether she could "say with any certainty that [Ross's] DNA [was] found on the underwear," and the expert responded that although she could state with certainty only that Ross could not be excluded as a possible source of the DNA she found, the "most common statistic would be that [the DNA could have been contributed to the sample only

by] roughly one in every 12,000 people." *Id.* at 29:21-30:14. The trial court appeared to understand the expert's testimony, but regardless, the court did not make any remarks or ask any questions suggesting that it misconstrued the expert's testimony to mean that Ross had been conclusively proven to be the only possible source of the DNA.

{¶ 22} Finally, Ross argues that L.W. "is the only possible source of evidence of sexual conduct," in light of the limitations of the DNA analysis and the results of a physical examination of L.W. completed by a nurse at Dayton Children's Hospital, who did not "note anything abnormal." Transcript Vol. II, 236:13-246:25 and 244:13-245:6. Ross insists that, as a result, his conviction for rape was not supported by sufficient evidence, but even assuming for sake of discussion that L.W.'s testimony was the only evidence of sexual conduct, her testimony, if deemed credible by the trial court, was sufficient of itself to prove that sexual conduct occurred.

{¶ 23} For all of the foregoing reasons, we hold that Ross's conviction for rape was supported by sufficient evidence, and that the trial court did not clearly lose its way and find Ross guilty of rape contrary to the manifest weight of the evidence. With respect to the trial court's verdicts on the charges of aggravated burglary and kidnapping, which were merged into the charge of rape for purposes of sentencing, "[u]nder Ohio law, '[w]hen a trial court dispatches with a count through merger, any error in the verdict [on the merged count] is rendered harmless beyond a reasonable doubt.' " *State v. Montgomery*, 10th Dist. Franklin No. 13AP-512, 2014-Ohio-4354, ¶ 39, quoting *State v. Wolff*, 7th Dist. Mahoning No. 2007 MA 166, 2009-Ohio-2897, ¶ 70. Consequently, even if the trial court found Ross guilty of aggravated burglary and kidnapping contrary to the manifest weight of the evidence, any such error would have been rendered harmless by

the merger of those charges into the charge of rape. Ross's assignments of error are overruled.

### III. Conclusion

**{¶ 24}** The trial court received quantitatively sufficient and qualitatively adequate evidence to support Ross's convictions. Therefore, Ross's convictions are affirmed.

. . . . . . . . . . . .

HALL, J. and WELBAUM, J., concur.


Copies sent to:

Mathias H. Heck, Jr.
Sarah E. Hutnik
Robert Alan Brenner
Hon. Gregory F. Singer